# Learned-Letcher Lumber Co. v. Fowler.

## Action of Assumpsit.

1. *Contract for hire of oxen; construction of.*—Under a contract to pay one dollar per day for the use of oxen, and to feed and take care of them till returned, the bailee is bound to pay the pecuniary compensation only for the days the oxen were actually used, but must feed and care for them so long as he keeps them under the contract.

2. *Same; duration of bailment.*—Where the duration of a bailment for hire is not expressed in the contract, it may be terminated at the will of either party.

3. *Error without injury in the admission of evidence.*—Where the controversy between the parties depended wholly upon the construction of a written contract, which the trial court properly construed, the admission of parol evidence as to the understanding of the parties, if erroneous, was error without injury.

APPEAL from the City Court of Anniston.

Tried before the Hon. James W. LAPSLEY.

The appellee, G. W. Fowler, brought this action before a justice of the peace, against the appellant, the Learned-Letcher Lumber Company, claiming one hundred dollars due by account for lumber sold to the defendant. The justice rendered a judgment for the plaintiff, and the defendant appealed to the City Court. In that court the defendant pleaded, (1) the general issue, (2) payment, (3) set off, claiming $354.00 due for goods, wares and merchandise sold by defendant to plaintiff; and the following special plea: "(4.) A plea of set off, viz: That the plaintiff was indebted to the defendant in the sum of $102.00 at and before the institution of the suit, due by a contract in writing in words and figures as follows:

*Rent Contract.*        ANNISTON, ALA., July 19, 1893.

I, G. W. Fowler, agree to rent from the Learned-Letcher Lumber Company three head of oxen, described as follows: One dark red, one black and white, one yellow and white. I agree to pay for use of the oxen $1.00 per day. I also agree to feed and take good care

of these oxen and return them to the Learned-Letcher Lumber Co. in as good condition as they are now in. These cattle are those purchased by the Learned-Letcher Lumber Co. from W. J. Higgins.     G. W. FOWLER.

*Witness:*  O. T. LETCHER.'

And the defendant avers that the plaintiff had the use of the said oxen under the contract 102 days, and is, and was at the institution of the suit, indebted to defenfendant in the sum of $102 on account thereof, which said sum defendant offers to set off against plaintiff's demand, and asks judgment for the excess." Issue was joined, and the trial was had on these pleas.

The plaintiff testified that the defendant was indebted to him for lumber sold to the amount of $396.90, and that he had received sundry payments, amounting to $297.56, leaving a balance still due him of $99.34. The testimony for the defendant tended to show that defendant had received from plaintiff lumber amounting to $392.09, and had sold goods, *etc.*, and made payments thereon, amounting to $350.74., and, in addition to this amount, the defendant claimed that the plaintiff owed $102 under the contract set out above, which was offered in evidence. The evidence for the defendant showed that the plaintiff had the oxen under the contract for 102 days, from July 19, 1893, to October 30, 1893.

Upon the examination of the plaintiff, in rebuttal, he was asked: "What was the arrangement between you and O. T. Letcher about the cattle, when they were delivered!" The defendant objected to this question, because it called for immaterial evidence, and sought by parol testimony to vary the terms of the written instrument. The court overruled this objection, and to this ruling the defendant duly excepted. The plaintiff then answered "that the cattle were bought by him from Higgins, and the defendant advanced the money to pay for them; that he was to repay the $40 paid to the defendant, at the rate of $1 per day, and that, when the $40 was paid, the cattle should be his; that this all occurred on July 15, 1893; and that when he signed the rent contract, which was several days afterwards, O. T. Letcher had said that it was an agreement that he and F. R. Letcher had fixed up to protect the Learned-Letcher Company in case anything should happen before plain-

tiff had paid for the oxen." Defendant moved to exclude this answer, on the ground that the writing was the best evidence of the contract, and the testimony was not admissible to vary the terms of the written contract. The court overruled the motion, and allowed the testimony to go to the jury, and the defendant excepted. Plaintiff's counsel asked plaintiff: "How many days he used the cattle?" Defendant objected to the question, because it called for immaterial evidence. The court overruled the objection, and defendant excepted. The plaintiff then answered that he used them about six weeks, but kept them until October 28th, when he delivered them to defendant. Defendant moved to exclude this statement as immaterial, incompetent, and irrelevant. The court overruled the motion, and defendant excepted. The testimony for the defendant further tended to show that there was was no agreement that, upon the payment of $40 by the plaintiff, the oxen should belong to him; but that the plaintiff was to pay $1 per day, as provided in the written contract.

In its oral charge to the jury, the court instructed them as follows: "The rent contract means that the plaintiff was to pay defendant $1.00 per day for the oxen for the days that he used them, and you will charge the plaintiff with $1.00 per day for the days that the evidence shows he used them." To this portion of the charge the defendant duly excepted. The defendant requested the court to give the following charges in writing, and duly excepted to the refusal of the court to give each of them: "(1.) If the jury believe the evidence, they will allow defendant a credit for the use of the oxen for the time he had them under the contract in evidence." "(2.) If the evidence shows that the plaintiff had the oxen for 102 days, and used them, or could have used them, all the time, then the defendants are entitled to a credit for the number of days he used them or could have used them." "(3.) If the jury believe from the evidence that the plaintiff agreed to pay the defendant $1.00 per day for the use of the oxen, then he would be liable to the defendant for $1.00 per day while he kept them, and this amount should be added to the other credits that are admitted by the plaintiff."

There were verdict and judgment for the plaintiff for $53.60, and the defendant appeals.

CALDWELL, JOHNSON & ACKER, for the appellant.

D. D. McLEOD, contra.

BRICKELL, C. J.—The contract in reference to the oxen is styled a "rent contract," and the promise of the maker is to "rent" the oxen. This verbal inaccuracy must be disregarded in the interpretation of the contract. In its true significance, technical and ordinary, "rent" is compensation for the possession and use of lands or of things corporeal. "Hire" pertains to things personal, and is the reward or compensation to be yielded for their possession or use. It is, of consequence, plain that the word "rent" was by the parties intended to bear the meaning of "hire." Hiring is a known species of bailment, and one of its distinguishing characteristics is that it is never gratuitous,—it is always for a reward or compensation.—Story on Bailments, § 8. The relation between the parties created by the contract was that of bailor and bailee. The duration of the bailment—the term of the hiring of the oxen—is not expressed; it was, therefore, subject to termination at the will of bailor and bailee; neither could insist, against the election of the other, that it should continue. As to the liabilities and duties of the bailee, the contract contains two separate, distinct stipulations. The first is that the hirer shall pay $1.00 per day for the use of the oxen. The second is, that he shall feed and take care of them, returning them to the bailor in as good condition as they were in when received. The contract of itself separates and distinguishes the stipulations. The one is not to make pecuniary compensation during the continuance of the bailment, but only for the days the oxen were used or employed. If the bailment continued for any length of time, there would be of necesity, as the parties knew, days when the oxen could not be used, or would not be used. Therefore, the pecuniary compensation was limited to days in which there was use of them. But, whether in use or idle, the oxen must be cared for and fed so long as the bailment continued; and, therefore, this duty of the bailee was not limited, like the pecuni-

[National Fertilizer Co. v. Thomason.]

ary compensation; to the days of the use. This was the construction given the contract by the city court in its instruction to the jury, and there is. no error in the instruction given, or in the refusal of the instruction requested.

We do not deem it necessary to consider the assignments of error relating to the admission of evidence. The evidence, if improperly admitted, could not have worked injury to the appellant, for it is apparent the controversy between the parties depended wholly upon the contract, and the construction was dependent on the terms of the writing, was matter of law, upon which it was the exclusive province of the court to pass.

Let the judgment be affirmed.