[No. 12898.    Department One.    April 12, 1916.]

STATE BANK OF SEATTLE, *Respondent*, v. JOHN RUTHE *et al.*
*Appellants.*[1]

ANIMALS—HIRE—LIABILITY—DUTY TO KEEP ACCOUNT.   It is the
duty of one hiring teams on grading work to keep the account of
the number of days they actually worked, if he would limit the lia-
bility to that extent, and failing to keep such account, he would be
liable for the entire period that they were in his possession.

PRINCIPAL AND SURETY—CONTRACTOR'S BOND—LIABILITY FOR SUP-
PLIES—RENT OF TEAMS—BURDEN OF PROOF.   In an action upon a con-
tractor's bond to pay for supplies actually furnished and used in the
construction of the contract, seeking to recover the reasonable rental
value of teams, the surety is liable only for the number of days
that the teams were actually employed on the work, the burden of
proof as to which is upon the plaintiff.

Appeal from a judgment of the superior court for King
county, Humphries, J., entered January 16, 1915, upon find-
ings in favor of the plaintiff, in an action on contract, tried to
the court.   Affirmed as to one defendant; modified as to the
other.

*McClure & McClure* and *Tucker & Hyland,* for appellants.
*Corwin S. Shank* and *H. S. Belt,* for respondent.

FULLERTON, J.—On August 1, 1913, the appellant John
Ruthe entered into a contract with the city of Duvall, a mu-
nicipal corporation, to improve certain streets of that city,
giving a bond, with the appellant United States Fidelity and
Guaranty Company as surety, conditioned, among other
things, to pay all persons who should supply the contractor
with provisions and supplies necessary to carry on the work
required by the contract.   During the progress of the work,
the contractor used certain teams and grading appliances
and fixtures, furnished by the respondent State Bank of Se-
attle.   The rental value of these he did not pay, and this

[1]Reported in 156 Pac. 540.

action was instituted by the bank against him and his surety to recover therefor.   From a judgment entered in favor of the bank, this appeal is prosecuted.

There was evidence introduced tending to show that the bank had procured the teams and outfit from Kalberg, and had leased them to the Union Contract Company, a corporation formed by Kalberg and contractor Ruthe, for a period which would cover the period of this contract; and based thereon and on certain other evidence in the record, the appellants make the contention that the hiring of this property by Ruthe was from the corporation named, and not the bank, and that the bank has thus no right of recovery.   The bank offered evidence tending to show that this lease had been abrogated by the parties and a new contract entered into with Ruthe for this particular contract.   The court found in favor of this version of the evidence, and, without reviewing it in detail, we think it in accord with the fact.

On the amount of the recovery, the court found that the teams had been employed by Ruthe on the work for a period equivalent to 965 days for one team; that their rental value was $2.50 per day, and that the rental value of the grading outfit for the same period of time was $350, and allowed a recovery for the aggregate of these sums, less $1,673 which it found to be the reasonable cost of feeding and caring for the teams during the period; the amount of the judgment being $2,054.90.

The appellants contend that the amount of the recovery is too large.   From the record, we have not been able to discover on what basis the court computed his estimates.   The number of days the teams were in Ruthe's possession was shown, and a detailed account of the number of days they were actually employed on the work was kept until August 18, 1913.   But whether we allow for the entire period, or whether we take the exact number of days for the time the record was kept and add to it the remaining period, assuming that the teams worked every day, neither calculation

gives the number of days for which the court allowed a recovery. The first method, if our calculations be correct, gives a number somewhat in excess of the number of days allowed, while the second method gives a less number.

It is the bank's contention that it is entitled under the contract to recover rental against both of the defendants for the number of days the teams were in the possession of Ruthe, regardless of whether or not they were worked for the entire period, while the defendants contend that they were entitled to recover only for the number of days the teams were actually worked. It is possible that, as against Ruthe, the true rule is a medium between these contentions; that is to say, the contract being one of rental merely, without definitive terms, the right is to recover for the actual number of days the teams were in a fit condition to work when given reasonable and ordinary care and attention—a number of days which might be greater than the number they were actually worked during the period of possession, but less than the total number of days possession of them was actually held. But, as we say, no record of this was kept either by Ruthe or the bank, and since the duty devolved upon Ruthe to keep the account, his failure so to do would permit a recovery against him for the entire period. As to the surety company, the right of recovery is measured by a different rule. It was not obligated under the contract, but was obligated to pay for supplies actually furnished and used in the performance of the contract in virtue of its bond, which would limit the recovery to the reasonable rental value of the teams for the time they were actually employed on the work. *Kongsbach v. Casey*, 66 Wash. 643, 120 Pac. 108; *National Surety Co. v. Bratnober Lum. Co.*, 67 Wash. 601, 122 Pac. 337.

As to the appellant Ruthe, therefore, the record furnishes no reason for modifying the judgment. The burden being upon him to show a legal reason why he should not be charged a reasonable rental for the teams during the time they were

in his possession, he must be charged with the full time, in the absence of such a showing.

As to the appellant surety company, the recovery is manifestly too large. Being liable for the rental value of the teams only on the principle that the labor of the teams was a "supply" necessary to the prosecution of the work (*National Surety Co. v. Bratnober Lum. Co., supra*), it can be charged with no greater number of days than the teams were actually employed on the work. The burden of making this showing was on the bank, and it is not met by a mere showing that the teams were in the possession of the contractor during the time the work was being prosecuted. Turning again to the record, we find, as we have said, that an accurate account of this time was kept until August 18, 1913, but that no record was kept as to the remainder, although it was shown that they did not work the full time; the work of the teams being interfered with at one time, if not more than one, by the officers of the humane society. For the time actually kept, the teams earned (at the rental rate found to be reasonable by the court, after deducting the cost of their keeping at the ratio also found by the court) the sum of $850.50. Add to this the rental value of the grading outfit, namely $350, the total amount that can be charged to the appellant insurance company, is $1,200.50.

The judgment appealed from is therefore affirmed as to the defendant Ruthe, and reversed as to the defendant United States Fidelity and Guaranty Company, with instruction to enter a new judgment against the last named company fixing its liability on the judgment against Ruthe at the sum of $1,200.50.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.