[No. 14532.  Department One.  September 23, 1918.]

KING COUNTY, *Plaintiff*, v. GUARDIAN CASUALTY & GUARANTY COMPANY, *Appellant*, MANHATTAN CONTRACTING COMPANY *et al.*, *Defendants and Respondents.*[1]

GUARANTY — OF PAYMENT — CONTRACT — CONSTRUCTION.   A letter from the surety upon a contractor's bond requesting a bank to make a loan to the contractor which was agreed should be a claim against the bond in case of loss on the job, is a contract of guaranty upon which the surety was directly liable without the filing of a claim against the bond.

APPEAL—REVIEW—OBJECTIONS BELOW.   Want of authority of an attorney in fact to execute a contract, not raised below, cannot be presented on appeal.

COUNTIES—CLAIM AGAINST BOND—CONTRACT.   The bond to secure claims against a contractor on county work covers sums due for the rental value of scows and other equipment used by the contractor for handling concrete and also the rental value of tugs which towed scows loaded with material that entered into the construction.

SAME—CLAIM AGAINST BOND—ATTORNEY'S FEES.   Semble, that where there is a controversy, attorney's fees are allowable to claimants in an action by a county to interplead claims against a contractor's bond.

[1]Reported in 175 Pac. 166.

APPEAL — REVIEW — OBJECTIONS BELOW.   Error in allowing attorney's fees in an action of interpleader cannot be raised for the first time on appeal.

Appeal from a judgment of the superior court for King county, Albertson, J., entered December 18, 1916, in favor of certain lien claimants, in an action in interpleader, tried to the court. Affirmed.

*Ernest B. Herald* and *Reeves Aylmore, Jr.*, for appellant.

*Farrell, Kane & Stratton*, for respondent American Savings Bank & Trust Company.

*Turner & Hartge*, for respondent Harper Barge & Lighterage Company.

*Smith, Newcomb & Worthington*, for respondent Chesley Tug & Barge Company.

MAIN, C. J.—In July, 1915, the Manhattan Contracting Company entered into a contract with King county for the construction of a bridge across the Duwamish river. The price agreed upon was $26,594. The contract provided for the payment, upon the county engineer's estimates, of not to exceed seventy-five per cent of the amount earned monthly, and the retention of twenty-five per cent of the contract price until completion and acceptance of the bridge and payment of all claims and charges incurred in performing the work. The Guardian Casualty & Guaranty Company became the surety on this contract. Thereafter the contracting company began the construction, and the work was fully performed and accepted June 21, 1916.

In March, 1916, the contracting company's account was transferred from the bank with which it had been doing business prior to that time to the American Savings Bank & Trust Company. On March 16, 1916, the bonding company made request as follows:

"American Savings Bank & Trust Co.,
     "Seattle, Washington.
  "Gentlemen: The Manhattan Contracting Company
will receive in the neighborhood of $10,000 upon the
completion of the Duwamish bridge. The said Man-
hattan Contracting Company is bonded by the under-
signed Guardian Casualty Company on this work. We
are consenting to their making a loan from your bank
in the sum of $3,500, and your advancing this amount
of money will be a claim against the fund and against
the bond in case of its nonpayment by said contracting
company. This will be your authority to furnish the
Manhattan Contracting Company the sum of $3,500,
and is our consent to have your claim for the said sum
recognized as a valid claim against our bond in case of
a loss upon the said job. This cancels all former let-
ters.                    Yours very truly,
           "Guardian Casualty & Guaranty Company,
                     "By Reeves Aylmore, Jr.,
  "Seal.                      Attorney-in-Fact."

The bank accepted the promissory note of the con-
tracting company for $3,500 and credited that amount
to its account. All checks drawn upon the account were
countersigned by the bonding company through its
attorney in fact. This money was expended by the
contracting company in completing the bridge and set-
tling claims incurred under the contract. On April
21, 1916, the bonding company requested an additional
loan for its principal as follows:

  "Previous to this time the undersigned has con-
sented to your having a claim against the bond of the
Manhattan Contracting Company on the Duwamish
bridge. This will be your authority to increase the
amount of your claim by thirty-five hundred dollars
($3,500) advanced today to the Manhattan Contract-
ing Company; this additional amount to be a part of
your written consent given by us heretofore.
                    "Yours very truly,
                      "Reeves Aylmore, Jr.,
                   "Attorney for Guardian Casualty
                      "& Guaranty Company."

The contracting company's note for this second loan was accepted by the bank, the money being credited to its account and checked out in the same manner as the first loan. The contracting company, prior to borrowing any money from the American Savings Bank & Trust Company, gave to the National City Bank an assignment of all moneys to become due under the contract. The contracting company made assignment to the American Savings Bank & Trust Company, as collateral security for loan by the latter to it, and procured a release from the National City Bank of the prior assignment, the claims thereunder being satisfied with a part of the money obtained on the second loan. The remainder of the second loan was expended in the prosecution of the work and in payment of claims for labor and material under the contract.

It appears from the evidence that the Chesley Tug & Barge Company was employed by the contracting company to tow scows loaded with materials entering into the construction of the bridge, also to salvage steel that had fallen into the river.

The Harper Barge & Lighterage Company rented to the contracting company a scow to be used to support a concrete mixer. The scow was occasionally used for carrying lumber and other materials from the shore to the bridge.

Within the prescribed time (thirty days from date of formal acceptance of the work by the county), claims were filed with the county against the contractor and against the bond. Among these were claims of Chesley Tug & Barge Company in the sum of $315.45, and Harper Barge & Lighterage Company in the sum of $312.65. The American Savings Bank & Trust Company did not file a claim against the bond, but asked judgment against the bonding company direct, relying

on guaranty of the bonding company, and also claiming the retained fund by assignment from the contracting company if any remain after satisfying the claims filed.

After the work was completed, King county brought an action interpleading the various claimants to adjudicate and determine their claims, depositing with the court for distribution among the claimants $8,-880.33 retained under provisions of the contract, being $2,592.92 in addition to the 25 per cent to be paid upon completion of the work.

The action was tried to the court. Judgment was rendered against the contracting company and bonding company in favor of the bank for $7,000, in favor of Harper Barge & Lighterage Company for $312.65, and in favor of Chesley Tug & Barge Company for $202.95. An allowance was made for an attorney's fee in each case. Other claimants were given judgment, but about these there is no controversy here. The sum deposited with the court was to be distributed *pro rata* among the claimants, with the exception that the judgment of the bank was made junior and subordinate to the rights of the other claimants; that is, the bank was not to participate in the fund until the amounts decreed to the other claimants had been paid.

The appeal, so far as it relates to the American Savings Bank & Trust Company, will be first considered It is contended by the appellant that the writings above set out were not guaranties, and for this reason the judgment was erroneous. The question then is whether the Guardian Casualty & Guaranty Company guaranteed the payment of the $7,000 by its instruments in writing. It will be noted that the bank advanced the funds on the written requests of the bonding company, the first request stating:

"Your advancing this amount of money will be a claim against the fund and against the bond in case of its nonpayment by said contracting company. . . . This will be your authority to furnish the . . . ,sum of $3,500, and is our consent to have your claim for the said sum recognized as a valid claim against our bond in case of a loss upon the said job."

The second request was for an increase of the loan and was made "a part of your written consent given by us heretofore."

The meaning of the parties must be gathered from the written instruments constituting the contract. It seems to be reasonably plain that it was the intention of the parties, as evidenced by the writings, that the bonding company was to indemnify the bank against any loss by reason of the loans mentioned. If this was not the intention it is difficult to see what meaning is to be given to the instruments. It does not appear that they were given for any specific purpose other than to indemnify the bank in the event there was a loss on the job and the contracting company did not repay the money.

The case is unlike that of *Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co.*, 99 Wash. 68, 168 Pac. 1124, in two respects. First, the writing in that case did not contain as does the one here, a statement that the money advanced should constitute a valid claim against the bond. The second distinction is that, in that case, the request was made upon a specific promise to do something else than repay the money advanced, while in the case now before us the writings contain no such specific promise.

It is further contended that the attorney in fact for the bonding company did not have authority to execute the writings. This question, so far as the record discloses, was not raised in the trial court, and, for

that reason, it cannot be presented here for the first time. *Manny v. Spokane State Bank,* 78 Wash. 230, 138 Pac. 682; *Belcher v. Young,* 90 Wash. 303, 155 Pac. 1060. The court did not err in rendering judgment in favor of the bank.

The claim of the Harper Barge & Lighterage Company was based upon the rental value of a scow which was used for handling a concrete mixer, together with some other equipment for running the concrete into the central pier. The question here is whether the rental value of this scow is a proper claim against the bond.

In *Hurley-Mason Co. v. American Bonding Co.,* 79 Wash. 564, 140 Pac. 575, it was held that the rental value of pump and hoist derrick furnished to the contractor in the construction of a city bridge furnished the basis of a claim which could be allowed against the bond. There can be no substantial distinction between allowing the rental value of a pump and hoist derrick in such a case and the rental value of a scow which is used in the necessary prosecution of the work.

The claim of the Chesley Tug & Barge Company is based upon the rental value of tugs which towed scows loaded with material which entered into the construction of the bridge. This was a proper charge against the bond. *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337; *State Bank of Seattle v. Ruthe,* 90 Wash. 636, 156 Pac. 540.

In those cases it was held that the rental value of teams of horses used upon public work was a valid claim against the bond. This was on the principle that the rental value of the teams was a supply necessary to the prosecution of the work. No valid distinction can be drawn between the rental value of teams necessary to the prosecution of the work and the rental value of a tug boat employed in the same capacity.

The appellant concludes its opening brief with the suggestion that attorney's fees were not allowable to any of the respondents in an interpleader case of this character, and cites *Maryland Casualty Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689. The holding in that case is not controlling upon this record. As pointed out in the opinion, the surety company brought the action to preserve the fund for the benefit of the claimants with whom there was no controversy. In addition to this, the question as to the allowance of attorney's fees appears not to have been raised in the trial court in the present case, and should not be considered for the first time upon the appeal.

The judgment will be affirmed.

FULLERTON and PARKER, JJ., concur.