(118 So. 148)

UNION INDEMNITY CO. v. STATE, for Use of R. S. ARMSTRONG & BRO. CO.

(3 Div. 845.)

Supreme Court of Alabama.    June 7, 1928.

Rehearing Denied June 28, 1928.

Weil, Stakely & Cater, of Montgomery, for appellant.

Walton H. Hill and Hill, Hill, Whiting, Thomas & Rives, all of Montgomery, for appellee.

THOMAS, J. The suit was grounded on a construction contract bond of like import to that considered by this court in Union Indemnity Co. v. McQueen-Smith Farming Co. (Ala. Sup.) 114 So. 415,[1] and the insistences now made by appellant are in the nature of a rehearing as to that decision.

In that opinion there was recitation of the facts of that case—the contract terms of the guaranty for payment of sums due for labor, materials, and supplies used in the performance of the contract—held to embrace piling and sway braces used for scaffolding in the river to (1) *support the men at work* and the materials of the superstructure while being constructed; (2) ferriage in transporting men and material across the river in the course of construction; (3) and *hire* of men; (4) *hire* of team and wagons for hauling machinery, timbers, and supplies for the contractor in connection with the building of the bridge as a part of the public highway.

The claims or demands for which suit was brought and on which judgment was rendered in the case were (1) rentals of equipment used in the construction of the bridge; (2) the small sums for reasonable expenditures for repairs to machinery; (3) and freight on the return of the equipment to the contractor.

It would appear that the latter charge of freight on the equipment repaired and returned finds analogy to the item of ferriage in transporting men and material across the river that was sustained and allowed in Union Indemnity Co. v. McQueen-Smith Farming Co., supra. There is analogy to be found in the general authorities collected in the note 30 A. L. R. 466, 470, and the allowance of freight charges on material, as being within lien statutes "for labor or material" as within a contractor's bond securing such claims.

Likewise, the question of rental of equipment as covered by the terms of the bond was passed upon by the McQueen-Smith Farming Co. Case, holding, as it did, that the *hire* of men and conveyances for men, material, supplies, etc., employed and used in connection with or in the construction of the bridge, were within the terms of the contract of the *parties*. A well-founded distinction cannot exist between the *hire* of conveyances (as teams and wagons) in the one case, and the hiring of equipment employed in the instant case in doing and performing such construction work.

The authorities cited by Mr. Justice Bouldin illustrate this. In Ill. Surety Co. v. John Davis Co., 244 U. S. 376, 383, 37 S. Ct. 614, 61 L. Ed. 1206, the items sustained and held recoverable were for rental of cars, track, and equipment, expense of loading the plant, and freight on the equipment used in the prosecution of the work. See, also, Title Guaranty & T. Co. v. Crane Co., 219 U. S. 24, 31 S. Ct. 140, 55 L. Ed. 72, 77; Taylor v. Connett (C. C. A.) 277 F. 945; Port Deposit Quarry Co. v. U. S. (C. C. A.) 277 F. 1019; U. S., for Use of Boyer, v. Port Deposit Quarry Co. (D. C.) 272 F. 698, for rent of a derrick or lighter for transporting stone to the place of deposit; Shannon v. Abrams, 98 Kan. 26, 157 P. 449, Ann. Cas. 1918E, 502, for dynamite, coal consumed in an engine operating rock crusher, lumber, and rent of tools and the quarry, wherein the surety company was held liable under the bond; County of Multnomah for Use of McMahan v. U. S. Fidelity & G. Co., 87 Or. 198, 170 P. 525, L. R. A. 1918C, 685, embraced rent of a road engine hired by the subcontractor for use in the prosecution of the work of construction.

It will be noted that in 44 A. L. R. 381, the general authorities pro and con are collected. The states holding that rental of equipment is not within the terms of a contractor's bond are Iowa, Maryland, Nebraska, Oklahoma, and Wisconsin. The states holding that such statutory bonds are broad enough to include claims for rental of equipment are Oregon v. Security Const. Co. (D. C. 1925), 3 F.(2d) 274 (involving Oregon statute); French v. Powell (1902) 135 Cal. 636, 68 P. 92; Sherman v. American Surety Co. (1918) 178 Cal. 286, 173 P. 161; Bricker v. Rollins (1918) 178 Cal. 347, 173 P. 592; Shannon v. Abrams (1916) 98 Kan. 26, 157 P. 449, Ann. Cas. 1918E, 502; Miller v. American Bonding Co. (1916) 133 Minn. 336, 158 N. W. 432; Dawson v. Northwestern Const. Co. (1917) 137 Minn. 352, 163 N. W. 772; Multnomah County v. U. S. Fidelity & G. Co. (1918) 87 Or. 198, 170 P. 525, L. R. A. 1918C, 685; Multnomah County v. U. S. Fidelity & G. Co. (1919) 92 Or. 146, 180 P. 104; National Surety Co. v. Bratnober Lumber Co. (1912) 67 Wash. 601, 122 P. 337; Hurley-Mason Co. v. American Bonding Co. (1914) 79 Wash. 564, 140 P. 575; State Bank v. Ruthe (1916) 90 Wash. 636, 156 P. 540; King County v. Guardian Casualty & G. Co. (1918) 103 Wash. 509, 175 P. 166; Ledingham v. Blaine (1919) 105 Wash. 253, 177 P. 783.

Under the rule of the federal statute (8 Fed Stat. Anno. [2d Ed.] p. 374 [40 USCA §

134

270]), the earlier cases were to the effect that such rentals were not within the terms, "all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract," as U. S. ex rel. McAllister v. Fidelity & D. Co. (1903) 86 App. Div. 475, 83 N. Y. S. 752; U. S. v. Conkling (1905) 68 C. C. A. 222, 135 F. 508. However, since the decision in Ill. Surety Co. v. John Davis Co. (1917) 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, affirming U. S., for the Use of John Davis Co., v. Ill. Surety Co., 141 C. C. A. 409, 226 F. 653, it now appears that the rental of equipment is considered, within the terms of the contract, an undertaking of the contractor's construction bond; that is to say, the John Davis Co. Case, supra, was an action against the surety on the bond of the contractor, given to secure the performance of work pursuant to a contract with the Navy Department, and cars, track, and equipment used in the work were treated as material, and a claim for rental was held within the bond. The obligation under the statute was declared to cover not only labor and material that went into the completed structure, but all *labor and material furnished in the prosecution of the work provided for in the contract.* Such was the broad view taken and declared by this court in McQueen-Smith Farming Co. Case (Ala. Sup.) 114 So. 415.[1] It is unnecessary to repeat the discussion so well conduced in that decision under the law and the contract that is before us.

The conclusion of the circuit court was on oral evidence, and the trial was by the court without a jury. The prima facie case was made out by plaintiff's witness Mertz, as to the receipt and use of the machinery by the contractor in the construction of the substructure of the bridge or approaches thereto, to warrant the trial court in entering judgment for rentals, etc., as claimed and as embraced in the provisions of the contract for materials and supplies. The plaintiff's witness thus states, as to the bill for repairs and freight on the machinery for that purpose:

"Repairs and freight on the return of equipment amounting to $217.07. When Monaghan returned the machinery he did not prepay the freight. We paid the freight. Part of these repairs were made in Atlanta and the other charges are for repairs showing the actual labor. All the items we made any repairs on were made in Atlanta. There was an accident to one hoisting engine, in the river, and he shipped it back to us, and we returned it to him. I think we had a big repair bill on one hoist."

In the case of Ill. Surety Co. v. Davis Co., supra, the court said:

"In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of

the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute. As the basis of recovery is supplying labor and material for the work, he who has supplied them to a subcontractor may claim under the bond, even if the subcontractor has been fully paid. Mankin v. United States, 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315. If Schott had formally sublet the contract to the engineering company, the surety company would clearly be liable."

And many cases are cited, among which are Title Guaranty Co. v. Crane Co., 219 U. S. 24, 31 S. Ct. 140, 55 L. Ed. 72; American Surety Co. of N. Y. v. Lawrenceville Cement Co. (C. C.) 110 F. 717. It would appear from these and other cases to be considered that the allowance of a claim for repairs is often attended with difficulty and dependent upon the particular facts entering into such a claim.

The case of Standard Boiler Works v. National Surety Co., 71 Wash. 28, 127 P. 573, 43 L. R. A. (N. S.) 162, was that of disallowance of *repair* bill on a steam shovel that "was used for a day or two upon the works" when the contractor became a bankrupt and the machinery was otherwise used; the decision rested upon the fact that the repairs made did not in *any manner* become a part of the improvement, nor were the repairs made the equivalent of labor and material used in the improvement. Equitable Surety Co. v. U. S., for Use of McMillan, 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394, and Hardaway v. National S. Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321, where recovery was denied to "financiers" who did not become *subcontractors.*

The work of a blacksmith employed by a contractor from day to day to sharpen tools is labor, within the statute and bond (French v. Powell, 135 Cal. 636, 68 P. 92), the services of a watchman whose presence was necessary to protect the *property* and *materials* allowed in Friedman v. Hampden County, 204 Mass. 494, 90 N. E. 851. And in Beals v. Fidelity & D. Co., 76 App. Div. 526, 78 N. Y. S. 584, it was declared the contractor's bond did not respond as to materials, tools, machinery, and appliances, though employed in the work, yet survived its performance and can be used upon other contracts. U. S. v. Morgan (C. C.) 111 F. 474; American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717; U. S., for Use of Lanham, v. Jacoby, 5 Pen. (Del.) 576, 61 A. 871. Such was the ruling in repairing pumps and machinery in City of Alpena ex rel. Besser v. Title Guaranty & S. Co., 159 Mich. 329, 123 N. W. 1126; Alpena ex rel. O'Brien v. Title Guaranty & S. Co., 159 Mich. 334, 123 N. W. 1127; Empire State Surety Co. v. Des Moines, 152 Iowa, 531, 131 N. W. 870, 132 N. W. 837. And in Empire State Surety Co. v. Des Moines, 152 Iowa, 531, 131

[1] 217 Ala. 35.

N. W. 870, 132 N. W. 837, the contractor's bond was not conditioned on payment of claims for labor and material furnished the contractor in the form of equipment or *repairs therefor,* as distinguished from *labor and material going into the completed bridge or false work;* and U. S., to Use of Briscoe, v. City Trust, etc., Co., 23 App. D. C. 155, and 43 L. R. A. (N. S.) 166, note, held such bond does not embrace charges for repairing machinery used in the work, *irrespective of whether the repairs are made at the place where it is in operation or at some distant point.*

In Fidelity & Deposit Co. v. Charles Hegewald Co., 144 Ky. 790, 139 S. W. 975, the holding was that a charge for repairs of machinery necessitated and made *in the course of the work* of excavating was embraced in the bond. The court said:

"In order to carry out the contract, it was essential that the construction company should have the machinery which it used in the work. This machinery could only be serviceable when it was in order. When its parts were worn or dulled, it would not properly do the work. The workmen engaged in the work were necessarily depending upon the concrete mixer and locomotive crane and shell digger and sand dryer, etc., to prepare for and carry on the work, just as the brick masons were depending on the scaffolding which would have to be erected from time to time to enable them to lay the brick, or turn the arch of the sewer. The work of repairing these machines and supplying the necessary parts was as essential in order to carry out the contract as was the work of the carpenter in building the scaffolding upon which the brick mason could stand to use the mortar which had been mixed by the concrete mixer. Neither went into the building of the sewer. When completed, the machinery would be carted away to be used in other places. And so, likewise, when completed, the scaffolding would be taken away. In the case of Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 Sup. Ct. 140, 55 L. Ed. 72, decided January 15, 1911, the court said, in holding that the Crane Company was entitled to pay for certain patterns which it had furnished a contractor engaged in building a government boat: 'Of the other class are the claims for patterns furnished to the molding department of the Puget Sound Engine Works. As was said by the judge below, those who furnish the patterns have as fair a claim to be protected as those who erect the scaffolding upon which the carpenters stand in doing their work upon the ship.' "

The holding of the District Court in United States v. Morgan (C. C.) 111 F. 474, was that the surety was liable for materials furnished and transportation thereon, for materials used in construction of the false work necessary to the performance of the contract, but was not liable for (1) repairs or equipment furnished for a steam launch *owned* and *used* by the contractor to transport supplies, (2) nor for materials for the construction of dump cars, tracks, derricks, storage sheds, or other structures or appliances used by the contractor or tools used by the workmen.

In American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, 720, 721, the circuit judge, commenting on the doctrine applied in the Morgan Case, supra, declared that it must be carefully applied *in the case of parts or repairs to the contractor's outfit;* held that the rule of discrimination need not be so "strictly enforced as to deny a claim for repairs of an incidental and comparatively inexpensive character, *made on the contractor's plant during the progress of the work and representing only the ordinary wear and tear* or the equivalent thereof." He says:

"The necessity of the application of this principle of discrimination becomes at once apparent when we consider the rule of proportion; otherwise a bond given under the statute with reference to a small contract for dredging might be substantially exhausted in protecting the purchase money of an expensive dredge, bought at the particular time of the dredging in question, but useful for continuous dredging to an indefinite amount under other contracts and at other localities. However, this principle of discrimination is so strongly entrenched in the practical rules properly applicable to the construction of this statute that it needs no further exposition. It has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only the ordinary wear and tear or the equivalent thereof. Such repairs, under some circumstances, are within the purview of the statute, and are not always excluded by any rules of construction which we must apply to it."

The foregoing illustrates the difficulty in applying the statute to the bond to repair. 43 L. R. A. (N. S.) 166.

Here the property was rented to the contractor and made necessary for repairs by its use in the conduct of the work, was returned to the lessor for repairs, which were made. The large percentage of the claim represented by the judgment was that for its reasonable hire or rental of such property in condition to do the required technical and mechanical services which was well understood to the lessor and lessee.

The *bailment or hire for compensation* was in accord with the right of ownership; the right to use, rent, or hire is a material incident thereof. Since the time of Sir Edward Coke, rent is the usufruct or product of realty and "a part and parcel of it," (Coke on Littleton, Lib. 1, c. 1, § 1, p. 4; 2 Minor, Ins. 32; 2 Wash. Real Prop. [5th Ed.] § 30; Tiedeman on Real Prop. § 641; 2 Bl. Comm. 41; 2 Steph. Comm. 23; 3 Kent, Comm. 461; Jarman on Wills [5th Ed. Bige.] 758; Schouler on Wills, 503; Bank v. Wise, 3 Watts. [Pa.] 395; Tubb v. Fort, 58 Ala. 277; Kirkpatrick v. Boyd, 90 Ala. 449, 7 So. 913;

Thompson v. Thompson, 107 Ala. 163, 18 So. 247), and to *hire* is to purchase the temporary use of a thing (Black, Law Dict. 573; Story on Bailment, § 8; Learned-Letcher Lumber Co. v. Fowler, 109 Ala. 169, 19 So. 396; 21 Cyc. 437; 29 C. J. 756; First National Bank of Wilkes-Barre v. Barnum [D. C.] 160 F. 245).

We are of the opinion that, if the claim for repairs was necessitated by reason of the ordinary wear and tear of the machinery hired, it would have been embraced in the contract of bailment and covered in the compensation for its use as rentals. However, the witness Mertz placed the burden of going forward with the evidence as to the nature of the repair bill, in his statement of the repairs and freight bill of $217.07; that contractor Monaghan returned the machinery and did not pay freight; that there was *an accident* to the hoisting engine in the river, and he shipped it back; that plaintiff "had a big repair bill on (that) one hoist," made the required repairs in Atlanta, and returned the machine to him at Leesburg. Such extraordinary repairs were beyond those of ordinary wear and tear of machinery on which rental is charged, and were within the statute, the terms of the bond, and necessary to a due prosecution of the work of construction by a contractor.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

## On Rehearing.

THOMAS, J. The contract is by Monaghan, the appellee, with the state of Alabama. And the suit on the bond is by the state for the use of R. S. Armstrong & Bro. Company, a corporation.

Pertinent provisions of the bond before us are:

"* * * That whereas the above bound John Monaghan have (has) this day entered into a contract with the said state of Alabama, for the building of the substructure and approaches to the bridge in Cherokee county, * * * copy of which said contract is hereto attached.

"* * * Upon the failure of the said John Monaghan to promptly and efficiently prosecute said work, in any respect, in accordance with the contract," etc.

"Upon the completion of said contract pursuant to its terms, if any funds remain due on said contract, the same shall be paid to said principal or sureties.

"The said principal and sureties further agree as part of this obligation to pay all such damages of any kind to person or property that may result from a failure in any respect to perform and complete said contract, and guarantee the payment of such sums due for *labor, material and supplies* used in the performance of this contract as set forth under special provisions."

The statute as set out in Judge Bouldin's opinion (Union Indemnity Co. v. McQueen-Smith, etc., 217 Ala. 35, 114 So. 415) is as follows:

"When any work is to be done by contract, whether with individuals, firms, private or public corporations, the state highway department shall require a bond in some guaranty company doing business in this state, of the contractor, for the faithful performance of the work agreed and contracted to be done. Such bonds shall be payable to the state of Alabama and shall be approved by the state highway department and it shall be in an amount equal to the contract price and conditioned to do and perform the work in accordance with the contract or agreement." Code, § 1328.

The two briefs of appellant on the original hearing and that upon the rehearing have been carefully considered.

The court has not and does not modify the decision and opinion in Union Ind. Co. v. State, 217 Ala. 35, 114 So. 415. It was cited with approval in Ed Pettus v. Dudley Bar Co., post, p. 163, 118 So. 153.

The notes in 44 A. L. R. 383–385, indicate that the opinion by Mr. Justice Brandeis in Ill. Surety Co. v. John Davis Co. (1917) 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, is in accord with well-considered general authorities. It will not be necessary to repeat the same at this time.

In Bricker v. Rollins & Jarecki (1918) 178 Cal. 347, 349, 350, 351, 173 P. 592, 593, concerning such a claim for *rental* of *mules* and *tools* used in highway construction, the contract was as follows:

"The bond in the cases before us was conditioned that 'if said principals as contractors in said contract fail to pay for any materials or supplies furnished for the performance of the work contracted to be done in and by said contract, or for any work or labor done thereon of any kind, said surety will pay the same,' etc."

The court said:

"In its most recent rulings as to the construction to be placed upon the above-quoted terms of the statute under which the public work involved in the instant case was to be done, the courts have adopted the views expressed in the case of French v. Powell, 135 Cal. 636 [68 P. 92], and have amplified somewhat upon the reasoning which sustains these views. In the case of Associated Oil Co. v. Commary-Peterson Co., Inc., 32 Cal. App. 582 [163 P. 702], in which a rehearing has been denied by this court, it was held that a plaintiff furnishing gasoline to a contractor for the doing of certain construction work upon the state highway under the provisions of the act of 1897, for the price of which he brought an action upon the bond, which was in the precise form of the bond involved in the instant case, was entitled to recover therefor. The court in that case held the motive power applied by the use of gasoline in the operation of the trucks which hauled the gravel, cement, etc., to be used in the construction of the highway,

was thus inseparably connected with and used in the performance of the work provided by the contract to be done and by the bond to be paid for. * * * We are unable to perceive any distinction in principle between the case at bar and the foregoing cases of French v. Powell, supra, and Associated Oil Co. v. Commary-Peterson Co., supra. In the case of the rental of animals or of machinery applying motive power to the performance of the work to be done under the contract, it is the energy of the instrumentality for which the price is paid, and that energy, whether in vital or mechanical or fluid form, is the thing which is supplied for and used in the work. It may not, in the strict sense, be embraced in the definition of the word 'materials,' but we think it may fairly be included within the meaning of the more comprehensive word 'supplies.' In the adoption of these views we are not without persuasive authority from other jurisdictions. These cases are referred to and discussed in the case of Sherman v. American Surety Co., 178 Cal. 286 [173 P. 161], and the conclusions in that case arrived at are hereby approved. The foregoing reasoning applies also to the rental of tools the use of which contributed to the performance of the work. It was the use of the tool and not the tool itself which formed the basis for the claim of recompense. Our conclusion is, therefore, that the appellant's contention as to those claims which involve the rental of mules or tools for use in the performance of the work cannot be sustained."

The same reasoning applies to the rental of the labor-saving machines in question.

■ Mr. Chief Justice ANDERSON, SOMERVILLE and BROWN, JJ., and the writer, on a reconsideration of the case, are of the opinion that the item of *repairs* of the hoisting engine and *freight bill* incident to its return, in the amount of $217.07, must be eliminated, notwithstanding the fact that the injury to be repaired was not caused in ordinary wear and tear, but was the result of an accident.

The judgment of the circuit court, as corrected by and with the item eliminated, is affirmed for the sum of $3,601.40, with interest from date of rendition of the judgment by the circuit court. The opinion is modified to the end stated, and the application for rehearing is overruled.