WALTER J. BRYSON PAVING CO., et al., v. STATE for the Use of LEWIS BEAR CO.

149 So. 563.
Division B.
Opinion Filed July 13, 1933.

*Giles J. Patterson* and *Philip D. Beall,* for Plaintiffs in Error;

*John M. Coe,* for Defendant in Error.

BUFORD, J.—Defendant in error was plaintiff in the court below and sued the plaintiffs in error, defendants in the court below, for the value of merchandise supplied to a sub-contractor on road construction. Walter J. Bryson Paving Company was the principal contractor and Southern Surety Company was surety on the contractor's bond.

The record shows that the sub-contractor purchased goods, wares and merchandise from the plaintiff to be used in connection with the construction of roads contemplated by the contract.

The record shows that the goods here in controversy were purchased by and shipped to the sub-contractor and that the same were delivered to and received by the sub-contractor at the construction camp. That the same were placed in a commissary of the sub-contractor and were furnished by him to his laborers working in the execution of the contract. It appears from the record that a part of this merchandise was used to feed the men on the job at a table which sub-contractor maintained for that purpose and that otherwise the merchandise was furnished by the sub-contractor to the laborers and account kept of what was furnished to each laborer, and the value of the merchandise deducted from the pay of such laborer when he was paid off.

The merchandise consisted of groceries, work clothing such as shoes, socks, overalls, underwear and work shirts,

and tobacco, cigars, cigarettes, chill tonic and other commodities required by laborers.

It is contended by the appellants that the surety company is not bound under the bond given pursuant to the statute in such cases and provided, to pay for goods, wares and merchandise furnished to the sub-contractor under the conditions in this case.

The record shows that the construction camps were maintained along the line of road and were moved from place to place as the road building progressed. That at times the construction camp was near to a town or village, but during most of the period of the construction it was many miles removed from any town or village. The evidence further shows that it was expedient and necessary, to get the best results, from labor, to have the supplies on hand to furnish the laborers at the camp; that without this the laborers would be required to leave the construction camp to secure supplies for themselves, which would interfere with their work and would keep them dissatisfied.

It is also contended that the items of tobacco, cigars, cigarettes, snuff and chill tonic were not such items as are necessary to be furnished to laborers, but the record shows, and we may say that it is a matter of common knowledge that laborers obtainable in the section of the country where the construction was in progress require these commodities and it is necessary for them to be provided in some manner for their use, if they are to be kept at work in anything like a satisfied condition.

So, the question for us to determine is whether or not merchandise of this character furnished to the sub-contractor and by him provided for and furnished to his laborers, the value of which he deducts from their respective earnings, constitutes such material and supplies as are con-

templated under the provisions of Section 3533 R. G. S., 5397 C. G. L.

In A. L. Young Machinery Co. v. Cupps, *et al.*, (Cal.) 297 Pac. 538, where the controversy involved machinery and appliances furnished, the Supreme Court of California said:

"In order to create liability on the part of the surety for the purchase price of tools and appliances under these contract bonds, at least the following elements we think must be present: First, the tool or appliance must be purchased specifically and particularly for use in the performance of the particular contract; second, the use of such tool or appliance must be at least proper, if not reasonably necessary, in connection with and about the carrying out of the contract; third, the tool or appliance must be used in or about the performance of the contract; fourth, the tool or appliance must be such that it is reasonably to be expected in the natural course of events that its normal life for the purpose for which it was designed will be practically consumed by its use in and about the performance of the contract, and in this connection the facts of each particular case must be taken into consideration. For example, general experience indicates that a crew of men engaged in the performance of a contract of this kind lose and break numerous small tools and items of equipment, such as shovels, spades, hammers, etc., by reason of which they are. for all practical purposes really consumed in the performance of the contract, notwithstanding the fact that such tools, if carefully handled and not lost, would be far from worn out by the actual amount of work for which they are used in the performance of a particular contract. If such small tools are purchased for the performance of the contract are proper or reasonably necessary therefor, are used in such performance and in such performance are lost or

broken, and such loss or breakage is reasonably to be anticipated. it is entirely possible that the surety on the bond might be liable."

In Union Indemnity Co. v. Handley, 220 Ala. 292, 124 Sou. 876, where a claim was allowed upon a bond conditioned to pay for labor, material and supplies used in the performance of the contract, the Supreme Court of Alabama said:

"Plaintiff in the suit here under review recovered judgment for, as he alleged in his complaint 'materials and supplies employed or used in the performance' of the contract and furnished by him and by others who had assigned their claims to him. These materials and supplies, if such they are due to be called, may be described as follows: Food for laborers, feed for mules, clothing (including shoes) bought by Hicks and furnished to laborers, tobacco, cigarettes, small tools, such as axes, hammers and pick handles, harness and mules, and small articles such as soap, cups, tubs, buckets, brooms and spoons. The question presented for decision is whether appellant, as guarantor, should be required to pay for the articles named, and the like, as being 'materials and supplies' within the meaning of the contract by which appellant bound itself, that is, materials and supplies used in the performance of the contract for the performance of which Hicks bound himself as principal, defendant as surety or guarantor.

"There are many decisions on the question here presented in some one or other of its aspects. They are in a great state of confusion and conflict. Two opinions of this Court have discussed the question and, in so far as they are applicable, have now been followed. Union Indemnity Co. v. McQueen, Smith Farming Co., 217 Ala. 35, 114 So. 415, and Union Indemnity Co. v. State for use of R. S. Armstrong, 218 Ala. 132, 118 So. 148. The contract here is

just what it was in those cases. There is no occasion to doubt that the contractor's bond became liable for the value of materials incorporated in the body of the construction contracted for, *viz.,* steel, lumber, cement, sand, etc. The articles here in dispute are of a different character and use. They are not bodily incorporated in the construction, but as the means or vehicle of contributing agency they are, as we think we may safely say, quite as essential, with one exception, to road construction as the materials which are bodily incorporated therein. Many courts have so ruled, and this Court in the cases to which we have referred has held, in the first named case, that: 'First, piping and sway braces used for scaffolding in the river to support the men at work and the materials of the superstructure while being constructed'—in that case a river bridge—. 'This material usually abandoned on completion of a bridge of this character, may be considered under the evidence as consumed in the using, and not a part of the contractor's general equipment. Second, ferriage in transporting men and material from one side of the river to the other in the course of the construction work. Third, hire of men, team and wagon for hauling machinery, timbers, and supplies for the contractor in connection with the building of the bridge' come within the 'supplies' covered by the bond, and in the second named that claims for the rentals of equipment used in the construction of the bridge were covered by the bond, but that a claim for the repair of a hoisting engine and freight bill incident to its return to the contractor were not so covered. The principle of these decisions, if to be further followed, would require a decision here affirming the judgment of the trial court.

"As for the items of tobacco and cigarettes, the Court is unable to deny that these articles too may have contrib-

uted something to the human energy put into the construction of this road by the employees of the contractor, and hence were worth paying for, and their reasonable price a proper charge against the liability assumed by the appellant company."

This view is maintained in Tyler v. Elliott, 119 N. C. 54, 131 S. E. 306, where the record showed a deduction of the price of the goods from the wages of the laborer, though in a later case where this was not shown some such items were not allowed.

In Union Indemnity Co. v. State for the use of Haigler, 99 Fla. 656, 127 Sou. 307, we held, that groceries furnished to a contractor under the circumstances shown in that case and consumed by the laborers are materials supplied and used in the prosecution of the public work, following the law as enunciated in the case of Brogan v. National Surety Co., 62 Law Ed. 257.

Now, there are some very high authorities which do not appear to agree with the conclusion which we reach but it is safe to say that the great weight of authority supports the conclusion that the surety will be bound in cases where the following elements are made to appear: First, that the materials or supplies were purchased specifically and particularly to be used directly or indirectly in the construction of the work contemplated; second, the materials or supplies must be such as are reasonably proper, if not necessary, in connection with and about carrying out the contract; third, the materials or supplies must be used directly or indirectly in or about the performance of the contract; fourth, the materials or supplies must be such that it may reasonably be expected in the natural course of events that their usefulness for the purpose for which they were designed will be entirely or practically consumed by the use thereof in and about the performance of the

contract. In considering these elements the facts presented in each particular case must have consideration. In this case we consider the facts that these construction camps were being moved along as the work progressed; that it was necessary to have food, clothing, tobacco, and we must admit in some sections of this State that chill tonic is still considered a necessity in many households and it is a matter of common knowledge that it is almost an indispensible article in all commissaries.

The record shows, as heretofore stated, that for the sub-contractor to carry on the construction it was necessary, or at least vastly expedient, for him to have on hand at the construction camp these supplies to be furnished to the laborers as and when they required such supplies and that they were procured for that particular purpose and were so furnished to the laborers, an account being kept thereof and the value thereof deducted from the pay coming to the laborer on pay day.

There were a number of items in the original bill of particulars which were not allowed by the trial court, such as candy, high-class tobaccos, women's clothing and other articles of merchandise which the trial court did not deem to be needful for the use of laborers in a construction camp. We think those items were properly stricken, but having looked carefully over the bill of particulars, we find nothing left therein to be charged against the contractor and his surety which does not appear to have been properly included in supplies to be used "directly or indirectly by the sub-contractor in the prosecution of the work provided for in the contract."

For the reasons stated, the judgment should be affirmed. It is so ordered.

Affirmed.

402

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, and BROWN, J. J., concur.