[No. 10092.   Department One.   March 25, 1912.]

NATIONAL SURETY COMPANY, *Appellant*, v. BRATNOBER
LUMBER COMPANY *et al.*, *Respondents.*[1]

APPEAL—DECISIONS REVIEWABLE—AMOUNT IN CONTROVERSY—SEV-
ERAL CLAIMS—MONEY JUDGMENT—ACTION ON BOND.   In an action by
the surety on a bond to indemnify materialmen and laborers upon
public work, brought to establish the amount of its liability on
various claims filed, in which judgment was given to the claimants
upon their respective cross-complaints, no appeal lies in the case of
any cross-complainant in whose favor judgment was given for less
than the sum of $200, that being the jurisdictional amount on appeal
to the supreme court in case of judgment for the recovery of money
only.

MUNICIPAL CORPORATIONS—PUBLIC WORKS—BONDS TO SECURE LA-
BORER AND MATERIALMEN—SUBJECTS INCLUDED—STATUTES—CONSTRUC-
TION.   Under Rem. & Bal. Code, § 1159, requiring contractors on
public work to furnish a bond to pay all laborers, mechanics, sub-
contractors and materialmen and all persons who shall supply such
persons with provisions or supplies for carrying on such work, all
just debts, dues and demands incurred in the performance of the
work, the liability on the bond is not limited to such provisions and
supplies as enter into and become a part of the finished product, as
in the case of liens under the lien laws of the state, notwithstanding
that there is an analogy between the two laws; and the legislature
has power to so provide.

STATUTES—TITLE AND SUBJECTS.   The title, an act requiring bonds
from contractors on public work conditioned to pay laborers, me-
chanics, materialmen, and others, is sufficiently broad to include
provisions to indemnify parties furnishing "supplies and provisions"
for carrying on the work, although such supplies or provisions did
not enter into or become a part of the finished improvements; the
doctrine of *sui generis* not applying in such case to the words "and
others."

SAME.   A bond under Rem. & Bal. Code, § 1159, to indemnify
laborers, mechanics, subcontractors and materialmen, and all per-
sons supplying such persons with provisions or supplies for carrying
on the work, covers fuel for a steam shovel used in excavating;
also the services performed by teams with drivers furnished to the
contractor, together with hay and grain to feed the horses.

[1]Reported in 122 Pac. 337.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered November 13, 1911, upon findings establishing plaintiff's liability upon a bond given for the protection of materialmen and laborers upon city work, after a trial to the court. Dismissed in part, and affirmed in part.

*John W. Roberts* and *George L. Spirk*, for appellant.

*Lyter & Folsom*, for respondent Wainwright & McLeod.

*James B. Howe* and *Hugh A. Tait*, for respondent Seattle Electric Company.

*J. H. Allen*, for respondent Chas. H. Lilly Co.

*Palmer & Askren*, for respondents Gholson & Muncy.

*Byers & Byers*, for respondents John L. Craib and Henderson Saddlery Co.

*Martin J. Lund*, for respondent Charles Hansen.

*Tucker & Hyland*, for respondent Cornwall & Sons.

*Herchmer Johnston*, for respondent Washington Hay & Grain Co.

Parker, J.—On December 7, 1909, Paul Steenstrup entered into a contract with the city of Seattle for the construction of a public street improvement. To secure the faithful performance of the contract, and also to secure the claims of laborers, mechanics, materialmen, and others furnishing labor, material, provisions and supplies, for the carrying on of the work, he executed a bond to the city in the sum of $22,000 conditioned as required by chapter 207, § 1, p. 716, Laws of 1909; Rem. & Bal. Code, § 1159, which provides that contractors in such cases shall furnish a bond conditioned that they will:

"Pay all laborers, mechanics, and subcontractors and materialmen, and all persons who shall supply such person or persons or subcontractors, with provisions and supplies for the carrying on of such work, all just debts, dues and demands incurred in the performance of such work."

The National Surety Company became surety upon the bond so furnished by Steenstrup. During the progress of the construction of the improvement, numerous claims were filed with the city for work, provisions, and supplies claimed to have been furnished to Steenstrup for the carrying on the work. These claims were so filed as the law provides, as a prerequisite to the rights of the several claimants to maintain actions therefor against the surety company as surety upon the bond. The surety company, in order to procure an adjudication of these claims and the extent of its liability therefor as surety upon the bond, commenced this action in the superior court for King county, against all of the claimants, seeking to have them all brought into the action and required to litigate their claims therein. The owners of the claims here involved, as well as others, appeared and set up their several claims by cross-complaints. From judgments in their favor against the surety company, it has appealed to this court. While the judgments are all evidenced in one writing, signed by the court and so entered, they are in effect separate judgments in favor of each claimant against the surety company.

A number of respondents whose separate claims and judgments thereon amount to less than $200, have moved to dismiss the appeal, in so far as it is sought thereby to reverse the judgments which are in their favor. These motions are rested upon the ground that this court has no jurisdiction to entertain an appeal from these judgments, because the amount involved therein, in each case, is less than $200; since there is nothing involved except the recovery of money, the same as if the several claimants were separately suing appellant upon the bond. It could hardly be seriously argued that if the claimants were attempting to recover the amount of their several claims from appellant by separate actions, that there would be any appeal allowable from the judgments in favor of those whose claims are less than $200. *State ex rel. Gillette v. Superior Court*, 22 Wash. 496, 61 Pac. 158; *State ex*

*rel. Wallace v. Superior Court*, 24 Wash. 605, 64 Pac. 778;
*State ex rel. Bassett v. Freasure*, 39 Wash. 198, 81 Pac. 688;
*State ex rel. Plaisie v. Cole*, 40 Wash. 474, 82 Pac. 749;
*State ex rel. Lack v. Meads*, 49 Wash. 468, 95 Pac. 1022;
*Hall v. Cowen*, 51 Wash. 295, 98 Pac. 670.

·Now, does the mere fact that these claims are sought to be recovered in this one action enlarge the right of appeal of the respective parties, in so far as that right may be affected by the amount involved? It seems to us this question has been fully answered in the negative by the decision of this court in *Garneau v. Port Blakely Mill Co.*, 20 Wash. 97, 54 Pac. 771. It appears that the several claimants in that case had foreclosed their several logger's liens upon certain logs, and before the sale of the logs they had been converted by the mill company to its own use. Thereupon the several claimants, whose liens had been established by the decree, brought an action for damages against the mill company because of its appropriation of the logs, and having been successful in their damage suit against the mill company, it appealed to this court, when they moved for a dismissal of the appeal because the amount of each of their separate claims was less than $200. Disposing of the motions in favor of the claimants, Justice Dunbar, speaking for the court, said:

"It is argued by the appellant that the plaintiffs, having submitted themselves to the jurisdiction of the court, and having stood ready to receive the benefits of the joint trial, are now estopped from raising the question of jurisdiction; but we do not think this argument is tenable. The law permits them to join in these trials simply for the purpose of convenience, and for the purpose of saving costs to all parties; but it does not, we think, affect any material right which any of the plaintiffs would have had had he brought an independent action and tried it independently. It is also urged that these actions depend upon a lien, and that, the establishment of the lien being the basis of the action, they do not fall within the constitutional inhibition; but it seems to us that the establishment of the lien is purely incidental,

and that the action is a straight action for the recovery of money."

The only difference we see between that situation and this, is that, in form, the surety company is here the plaintiff. It is plain, however, that in substance the several claimants are the plaintiffs.   Their several claims are affirmatively asserted by cross-complaints.   Nothing else is involved, and the fact that appellant commenced the action, does not, it seems to us, change the nature of the controversy between them and appellant.   Each claimant is after all simply attempting to recover the amount of his claim upon the bond, from appellant, and as between each claimant and appellant we see nothing more involved, than as if each claimant were suing separately in an action commenced by himself.   It is true that, by direction of the court, these several judgments are to be satisfied from the fund still remaining in the hands of the city and due to Steenstrup upon the contract, in so far as that fund will go; but they are nevertheless personal judgments against the surety company, as prayed for by the claimants in their several cross-complaints.

We do not find in the record formal motions to dismiss the appeal made by all of the judgment creditors whose claims are less than $200; but since the question has come to our attention, and it is jurisdictional, we conclude that the appeal must be dismissed as to all of the judgments rendered upon claims the several amounts of which are less than $200. This leaves for consideration only those claims which involve more than $200.   These we will now notice.

The contentions of counsel for appellant against the several claims of respondents are rested upon the assumption that they are all for services, provisions and supplies of such nature as did not enter into or become a part of the finished improvement so that a right of lien therefor would have existed under the law if they had been rendered and furnished to an individual under like circumstances.   In other words, that the items of such claims are not such as are secured by

the bond, because they would not be lienable items if the improvement had been constructed for a private person. We will assume, for the sake of argument, that the items here involved are of this nature, and will notice the general contentions of counsel for appellant based upon this assumption, before discussing the several claims separately.

It is argued, in substance, that we should approach the solution of this controversy and proceed along the same line of reasoning as if there were here involved the question of enforcing these claims as liens against the improvement and the land upon which it is situated. It may be conceded that laws of this nature, generally speaking, have for their object the securing of claims of mechanics, materialmen, and others, in lieu of lien laws which are not applicable to public improvement, and that the principles of construction applicable thereto are in substance the same. It does not necessarily follow, however, that we are to look to the statutory lien laws to determine as to whether or not a particular item is secured by such a bond. If the law providing for the furnishing of the bond also provides that only lienable items, as defined by the lien statutes, are to be secured thereby, then, of course, the lien statutes furnish the complete answer to the question of the validity of such claims as against the bond. This was the view taken by this court in *Clough v. Spokane*, 7 Wash. 279, 34 Pac. 934, where there is involved a claim for labor performed upon a public improvement for the contractor, and it was sought to hold the city of Spokane liable to pay for such labor because it had failed to take from the contractor a sufficient bond securing claims for labor performed upon the contract, as it was there insisted that the law required the city to do, and failing therein had rendered itself liable. A reading of that decision will show, however, that the court held in favor of the city because the law then in force relating to bonds of contractors upon public works, provided that such bonds should be given to secure laborers and others when the contract was for "any work of any char-

acter which, if performed for an individual, a right of lien would exist under the law" (Laws of 1887-8, p. 15; Hill's Code, Section 2415); and there being, at that time, no right of lien provided by statute for labor performed of the kind there involved, the court held that no bond of this nature was required; and hence, the city had violated no duty in failing to take from the contractor a sufficient bond. *Sears v. Williams*, 9 Wash. 428, 37 Pac. 665, 38 Pac. 135, 39 Pac. 280. In the following decisions of this court, claims were held good as against the bond upon the theory that a right of lien would have existed therefor under the lien statutes if the improvement had been made for a private individual. *Ihrig v. Scott*, 5 Wash. 584, 32 Pac. 466; *Gilmore v. Westerman*, 13 Wash. 390, 43 Pac. 345; *Spokane & Idaho Lumber Co. v. Loy*, 21 Wash. 501, 58 Pac. 672, 60 Pac. 1119; *Rounds v. Whatcom County*, 22 Wash. 106, 60 Pac. 139.

In 1897, the law involved in the decisions we above noticed was amended, when there was omitted therefrom the words, "Any work of any character which if performed for an individual a right of lien would exist under the law." Laws of 1897, p. 57; Ballinger's Code, § 5925. The law was reenacted in 1909 as quoted near the beginning of this opinion, and some other changes made therein with which we are not here concerned, so that, since 1897, the conditions of the bond required by the law have remained unchanged, and furnish the only statutory language descriptive of the nature of the claims secured by the bond. Since then it has not been a question of what a claimant's rights would be under the lien laws, if the improvements were being constructed for a private individual, though it may be that we should regard a claimant's rights in somewhat the same light as if we were testing his lien right against the property upon which the improvement is situated, and such lien right were defined by the language of the required statutory condition of this bond. This analogous lien right, which we are here considering, must be measured by those conditions. There is

now no other language in the law defining the claimant's rights. The law does not refer us to any lien right provided by law as a measure of a claimant's rights, as the law of 1887-8 did, which was involved in the decisions above noticed.

In support of their general contention that no claim is allowable under this law except for work performed directly upon the improvements and for material furnished for and to become a part of the completed improvement, counsel for appellant rely principally upon our decision in *Gate City Lumber Co. v. Montesano*, 60 Wash. 586, 111 Pac. 799. That was an action against the city to recover for lumber claimed to have been furnished to a contractor for the city to be used in the construction of a plank roadway; the city having failed to require of the contractor a bond as provided by this law, which fact under the law rendered the city liable to the same extent as the sureties upon such a bond. There was no question in that case but that the material claimed to have been furnished was of such nature as to come within the security of the bond, but the question was only as to whether or not, within the meaning of the law, the material had been furnished for the improvement. The language of the decision particularly relied upon is quoted by counsel from page 589 as follows.

"The question then arises, who is a materialman, and what is a just debt incurred in the performance of contract work, within the meaning of the act of 1909. In the case of *Fuller & Co. v. Ryan*, 44 Wash. 385, 87 Pac. 485, we held that a materialman could not claim a lien for material which was neither used in the building nor delivered on the ground for use therein. See, also, *Foster v. Dohle*, 17 Neb. 631, 24 N. W. 208; *Weir v. Barnes*, 38 Neb. 875, 57 N. W. 750. We are not disposed to place a broader construction on the term *materialman,* and *just debts incurred in the performance of contract work,* under this statute. A more liberal construction would permit of the grossest frauds on the part of contractors, and is not necessary for the protection of *bona fide* materialmen. It appears from the testimony in this case that at least three different lumber concerns furnished ma-

terial to be used in this roadway, and if a materialman brings himself within the terms of the statute by simply loading lumber on the cars at a distant point and billing it to the contractor without more, it can readily be seen that the contractor can mulct the city, or the sureties in case a bond is given, for the value of material many times in excess of the requirements of his contract."

This was said when there was nothing involved but the question as to whether or not the lumber had been actually furnished for the improvement. It is evident that, when the court restricted the meaning of the words "just debts incurred" etc., it only had in mind the question of whether or not the debt incurred for the particular lumber was incurred for the carrying on of the work, in view of the uncertainty of the fact of the lumber having been actually furnished for such purpose. We are quite unable to see anything in that decision which will aid us in determining the rights of the claimants here, who furnished "provisions and supplies for the carrying on of such work," to which class most, if not all, of these claimants belong. Other decisions of this court relied upon we think are even more easily distinguishable from the case before us.

*Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106, was an action to recover for provisions consisting of meat, etc. furnished to a railway contractor. The right to so recover was rested upon the general lien law of 1893, Laws of 1893, p. 32, entitled "An act creating and providing for the enforcement of liens for labor and material." So far as the act provided for the securing of lien rights, it did not go beyond the title. It did, however, contain a provision for the furnishing of bonds by railroad contractors to secure "laborers, mechanics, materialmen, and persons who supply such contractors with provisions." In that case it was held that the provisions of the act relating to the furnishing of bonds by contractors to secure claims, was not within the title of the act; but related to an entirely different sub-

ject to that expressed in the title, and hence, the claim for provisions sought to be recovered under the bond provisions of the act could not be successfully maintained. In that case, the court also distinguishes between the words "material" and "provisions," and from the remarks there made upon that subject, it is evident that the court would not have enforced a lien for provisions under that act, since it gave only a lien for labor and "material to be used in the construction," etc., though the question there involved was not one of lien, but of the claimants' rights under the bond provisions of the act, not covered by its title.

*Tsutakawa v. Kumamoto*, 53 Wash. 231, 101 Pac. 689, 102 Pac. 766, was an action to enforce a lien upon a railway for the value of groceries etc. furnished to a contractor while constructing the road, and involved the construction of the same law as in the *Armour* case, *supra*. That law, however, had been reenacted in 1905 after the decision of the *Armour* case (Laws of 1905, p. 229) without any change except the change in its title, which as reenacted read, "An act relating to liens for labor performed, material, provisions and supplies furnished." It will be noticed that the substance of this change amounted only to inserting in the title the words, "provisions and supplies." There was not inserted in the body of the act relating to liens, however, any additional provisions extending the lien right beyond what it had previously been, the language of the law still securing liens to "persons performing labor upon or furnishing material to be used in the construction" etc. and nothing more. It was held that the lien rights were not enlarged by this mere enlarging of the title. It was simply an instance of a title being broader than the plain terms of the act; hence, the enforcement of a lien for supplies was denied because they were not within the meaning of the word material as used in the act.

*Hall v. Cowen*, 51 Wash. 295, 98 Pac. 670, involved the right of a lien upon lots for the rental value of scrapers

rented to a contractor who used them in improving the lots by grading. This was claimed as a lien upon the lots under a statute giving a lien to one who "clears, grades, fills or otherwise improves," the lot or street in front of such lot. Clearly the owner of the scrapers did not clear, grade, fill or improve the lots, and was therefore held not to have a lien under that statute.

*Gilbert Hunt Co. v. Parry,* 59 Wash. 646, 110 Pac. 541, involved an attempt to enforce a lien under the general lien law, Rem. & Bal. Code, § 1129, securing as we have seen, liens to persons "performing labor upon or furnishing material to be used in the construction," etc. The only question there involved was as to the items furnished being lienable, and they not being either labor or material "to be used in the construction," within the meaning of the law, the enforcement of the lien was denied.

In the late case of *Akers v. Lord, ante* p. 179, 121 Pac. 51, there was an attempt to enforce a lien for what in no event could have been classed other than as supplies, under a statute which did not give a lien for provisions or supplies, and for that reason the claim of lien was held unenforceable. These decisions proceed upon the theory as stated in *Tsutakawa v. Kumamoto, supra,* that "the object of these statutes is to secure a lien to the laborer and materialmen for that which goes into the finished structure." In other words, when a statute uses only the words, "labor upon" and "material to be used in the construction," it is only contemplated thereby that liens are to be secured for labor performed upon and material going into and becoming a part of the finished structure.

We think this court has not yet been called upon to deal with and measure the rights of claimants such as are here involved, under a statute which makes a valid provision, in direct terms, for securing persons who furnish "provisions and supplies for the carrying on of such work," in addition to labor and material, as this law does. While this court, fol-

lowing the apparent weight of authority, has proceeded upon the theory that provisions and supplies are not lienable items in view of the fact that they are not by such statutes made lienable in terms, and do not enter into and become a part of the finished structure, it does not follow therefrom that the legislature may not provide for the securing of claims of this nature by lien, or by requiring from contractors bonds for that purpose. The fact that such provisions and supplies do not enter into and become a part of the finished improvement does not argue against the existence of legislative power to so provide. Such power has been frequently exercised by legislatures. *Kollock v. Parcher,* 52 Wis. 393, 9 N. W. 67; *McLester v. Somerville etc.,* 54 Ala. 670; *Grants Pass Trust Co. v. Enterprise Min. Co.,* 58 Ore. 174, 113 Pac. 859; *Carson & Co. v. Shelton,* 128 Ky. 248, 107 S. W. 793, 15 L. R. A. (N. S.) 509; *Perry v. Duluth Transfer R. Co.,* 56 Minn. 306, 57 N. W. 792.

It is also argued that the rights of claimants under this law must be confined to claims for labor upon and material furnished to become a part of the improvement, as in lien cases, because the title of the act is not broad enough to include more. The title of the act is,

"An act requiring bonds from contractors, contracting to do public work, conditioned to pay laborers, mechanics, materialmen and others." Laws of 1909, p. 716.

It is insisted that the word "and others" cannot be held to include those who furnish provisions and supplies, or in any manner to extend the provisions of the act beyond what it would have been had the words "and others" been omitted from the title. A somewhat elaborate argument is made in this behalf, rested largely upon the doctrine of *ejusdem generis.* It may be well doubted that this doctrine should be given that force in the construction of a title of an act that it ordinarily receives when we look for the meaning of doubtful language in the body of an act. The title is only for the purpose of pointing out in very general terms the subject-

matter of the proposed legislation.    As was said in *State ex rel. Zent v. Nichols,* 50 Wash. 508, 97 Pac. 728:

"This court has often held that the title of an act, in order to comply with the constitutional provisions above quoted, need not be an index to the contents of the act; that the purpose of the title is to call attention to the subject-matter of the act so that any one reading it may know what matter is being legislated upon, and it is sufficient when it is broad enough to accomplish that purpose.    For the various provisions constituting the act, the body of the act must be consulted, the title being neither expected nor required to give details."

In *State ex rel. Olsen v. Board of Control,* 85 Minn. 165, 88 N. W. 533, the court makes some very pertinent remarks touching the construction of a title of an act as follows:

"Every reasonable presumption should be in favor of the title, which should be more liberally construed than the body of the law giving to the general words in such title paramount weight.    It is not essential that the best or even accurate title be employed, if it be suggestive in any sense of the legislative purpose.    The remedy to be secured and mischief avoided is the best test of a sufficient title which is to prevent it from being made a cloak or artifice to distract attention from the substance of the act itself.    The title, if objected to, should be aided if possible by resort to the body of the act, to show that it was not intended by such title to mislead the legislature or the people, nor distract their attention from its distinctive measures."

In harmony with this view it was held in *Chicago Lumber Co. v. Newcomb,* 19 Colo. App. 265, 74 Pac. 786, that an act entitled "An act to secure liens to mechanics and others" was sufficiently broad to cover provisions of the act which secured liens to materialmen and contractors as well as mechanics.    That decision seems directly in point.    The words "and others" in that title, held to include materialmen and contractors referred to in the body of the act, is a no more liberal construction of the title than to construe "and others" to include provisions and supplies referred to in the

body of this act. In support of their argument upon this point, counsel for appellant rely particularly upon *Armour & Co. v. Western Const. Co.,* 36 Wash. 529, 78 Pac. 1106, above cited. The title of the act there involved as we have noticed, contained no general words like "and others," but only the words "labor and material." That act not only provided for liens for labor and material, but also attempted to provide for securing claims by contractor's bonds. It was under the latter provision that the case was prosecuted, and failed because the subject of contractor's bonds was not included in the title. It is easy to see that the words "liens for labor and material," standing alone, do not suggest to the ordinary mind that the subject of contractor's bonds is to be legislated upon in the act. The act here involved, both in its title and body, relates only to securing claims by *contractor's bonds,* and has no reference whatever to liens. Its title we think fairly suggests all that is necessary, as to who are to be secured by such bonds in the body of the act.

We conclude that counsel's general contention that the rights of claimants under this law are confined to labor performed upon and material furnished to become a part of the finished improvement are not well founded, but that the broader language of the act may include many things which do not actually enter into and become a part of the finished structure. We will now notice the claims separately, so far as necessary, for the purpose of determining whether or not the items thereof come within the protection of the security furnished by the bond.

Respondents Wainwright & McLeod furnished to Steenstrup coal for fuel for a steam shovel, used by him in excavating, which was a necessary part of the construction of the improvement. Judgment against appellant was awarded Wainwright & McLeod upon this claim. It is insisted that this claim does not come within the protection of the security furnished by the bond, and that appellant is not liable therefor. It seems to us that this does not differ in principle

from the furnishing of explosives for railway construction and mining work, which are held to be lienable items in the following cases:   *Carson & Co. v. Shelton, supra; Powder Co. v. Knoxville etc. R. Co.*, 113 Tenn. 382, 83 S. W. 354, 106 Am. St. 836, 67 L. R. A. 487; *Keystone Min. Co. v. Gallagher*, 5 Colo. 23; *Giant-Powder Co. v. Oregon Pac. R. Co.*, 42 Fed. 470; *Schaghticoke Powder Co. v. Greenwich & J. R. Co.*, 183 N. Y. 306, 76 N. E. 153, 111 Am. St. 751, 2 L. R. A. (N. S.) 288.   These decisions, excepting *Carson & Co. v. Shelton*, seem to proceed, for the most part, upon the theory that explosives are included in the word "materials" as used in the statutes they deal with.   It may be possible that this court could hardly follow them upon that theory and be consistent with its former holdings under our lien laws, since explosives can hardly be said to enter into and become a physical part of the finished structure as material does.   We need not, however, here follow these decisions to their seeming ultimate logical result in this regard.   For, since this statute allows for "provisions" and "supplies" as well as "materials," by the prescribed conditions of the bond, it seems clear that, in any event, a commodity like coal, which is consumed in generating power, is included in the word "supplies."   Coal furnished and used in this manner may be said to enter into the structure very much as labor does, and it is possibly more analogous to labor than material, when used for power in this way.   In any event, it seems clear to us that coal thus furnished comes within the broad provisions of this act.   In the case of *Grants Pass Trust Co. v. Enterprise Mining Co., supra*, electric power was held to be a lienable item, upon the theory that it was a "supply," that being one word used in the statute providing for the lien.   37 Cyc. 607.   We conclude that the judgment in favor of Wainwright & McLeod should be affirmed.

Respondent R. E. McConaghy Transfer Company furnished to Steenstrup teams with drivers for work necessary in the construction of the improvement.   Judgment was rendered

in its favor upon its claims for this, against appellant. It is contended that this is not such a service or supply as comes within the protection of the bond, and that therefore appellant is not liable. In *Essency v. Essency*, 10 Wash. 375, 38 Pac. 1130, this court, considering a right of lien under a statute relating to farm laborers, said:

"One other question which will be material on the retrial is as to whether or not a lien could be maintained for the labor of the team of the respondent. The statute providing for such lien applies only to the labor of the person, and thereunder no lien will lie for work performed by the team. It is probable that where the contract is for the labor of a person and a team, for a certain rate, with no specification as to how much of it is for the team and how much for the person, a lien could be maintained for the contract·price for the labor of the person and the team. But, under other circumstances, the law does not authorize a lien for the labor of the team."

Under that decision, it would seem that, where a person was working for another with his own team, he could maintain a lien for the entire service, even though the statute seem to confine the lien to personal services only. In view of the broader provisions of this law, it seems to us it should be held to include the furnishing of services by teams and drivers thereof, even though no part of the service was personally performed by the owner of the teams so furnishing them. The manner in which this team work contributed to the improvement is not different in principle from that which was contributed to it by the furnishing of coal for the steam shovel, or by the furnishing of electric power had it been so furnished as in the Oregon case. This view finds support in the following: *Perry v. Duluth Transfer R. Co.*, 56 Minn. 306, 57 N. W. 792; *People, Use. of Smith v. Collins*, 112 Mich. 605, 71 N. W. 153; *Hogan v. Cushing*, 49 Wis. 169, 5 N. W. 490; *French v. Powell*, 135 Cal. 636, 68 Pac. 92. We conclude that the judgment in favor of the transfer company should be affirmed.

Respondents John & M. C. Forrester doing business under the name of Forrester Tide Land Stables, furnished to Steenstrup teams and drivers, and in addition thereto hay and grain to feed horses used by Steenstrup upon the work. Judgment was rendered in their favor upon their claims for this, against appellant. What we have already said relative to the furnishing of teams and drivers disposes of that part of this claim. It is further contended, however, that hay and grain so furnished does not come within the protection of the bond. In the case of *Kansas City etc. R. Co. v. Graham,* 67 Kan. 791, 74 Pac. 232, it was held that corn and oats furnished to a contractor, as this hay and grain was furnished, came within the protection of a law which required a bond with conditions almost exactly like this law does, using the words "provisions and goods" instead of the words "provisions and supplies" as in this law. That case appears to be exactly like this in principle. 32 Cyc. 742. It seems to us that the words "provisions" and "supplies" includes anything that is furnished for, and used directly in the carrying on of the work, and is entirely consumed thereby. Such things do not enter into and become a physical part of the finished structure, as materials do, as that word is generally construed; but they do become as much a part of the structure as the labor which is performed upon it. It seems quite clear to us that coal, horse feed, and work performed by teams, all come within the terms of the prescribed statutory conditions of this bond, which become the measure of the rights of the several claimants. We conclude that the judgment in favor of the Tide Land Stables should be affirmed.

While the principal contention of counsel for appellant has been made upon the question of whether or not the items we have been discussing come within the protection of the bond, they have also made some contention that the evidence, as to some of the claims at least, does not warrant the conclusion that the services, provisions, and supplies involved were actually furnished for the carrying on of this work.

The evidence is not entirely satisfactory in that regard as to all of these claims; but, in view of the whole record, we conclude that we are not warranted in disturbing the conclusion of the trial court upon those questions of fact.

What has been said by us in discussing the particular claims above mentioned, disposes of all the other claims involved in the appeal, for they all belong to one or the other of the classes above discussed. We of course have not considered the claims as to which the appeal is dismissed. We are of the opinion that, as to all claims involving less than $200 each, the appeal should be dismissed; and that as to all claims involving over $200, the judgment of the trial court should be affirmed. It is so ordered.

DUNBAR, C. J., GOSE, CHADWICK, and CROW, JJ., concur.