[No. 21044.   Department One.   June 25, 1928.]

FRED RACHOW, *Respondent*, v. PHILBRICK & NICHOLSON,
INCORPORATED, *et al.*, *Appellants*, STATE HIGHWAY
COMMITTEE, *Defendant*.

A. E. WILBER, *Respondent*, v. PHILBRICK & NICHOLSON,
INCORPORATED, *et al.*, *Appellants*, STATE HIGHWAY
COMMITTEE, *Defendant*.

FRED CARLSON, *Respondent*, v. PHILBRICK & NICHOLSON,
INCORPORATED, *et al.*, *Appellants*, STATE HIGHWAY
COMMITTEE, *Defendant*.

ARMAN WILBER, *Respondent*, v. PHILBRICK & NICHOLSON,
INCORPORATED, *et al.*, *Appellants*, STATE HIGHWAY
COMMITTEE, *Defendant*.[1]

[1] COUNTIES (46)—CONTRACTS — CONTRACTORS' BONDS—TIME FOR
FILING CLAIM.   Where claims are filed by materialmen against
the bond and reserve fund of a contractor on county highway
work before completion of the work, and re-filed within thirty
days after completion of the work, an action thereon commenced
within four months after the last filing is in time.

[2] COUNTIES (46)—CONTRACTORS' BONDS—SUBCONTRACTORS—NOTICE
OF FURNISHING MATERIAL—EFFECT OF CONTRACT.   Where a con-
tract on county highway work provided that subcontractors
should be considered agents of the contractor, the subcon-
tractors were merely agents of the principal contractor, and
not subcontractors within the meaning of Rem. Comp. Stat.,
§ 1159-1 requiring notice to the original contractor within ten
days of furnishing supplies to a subcontractor; and it cannot be
urged that the provisions of the contract were merely for the
protection of the state and unavailable to materialmen.

[3] COUNTIES (46)—CONTRACTORS' BONDS—CLAIMS FOR SUPPLIES—
EQUIPMENT—SHOEING HORSES.   The shoeing of horses used on
county highway construction work is not furnishing "provisions"
or "supplies" used directly in carrying on the work and con-
sumed thereby for which a lien can be claimed against the
contractors' bond.

[1]Reported in 268 Pac. 876.

[4] COUNTIES (46)—CONTRACTORS' BONDS—CLAIMS—USE OF HORSES. Claims against a contractor's bond for the use of horses furnished by the claimants for use on the job are sustained, where evidence in support thereof is uncontradicted.

[5] ASSIGNMENTS (6) — COUNTIES (46) — CONTRACTORS' BONDS — CLAIMS. Claims against the bond of a contractor on county road work are assignable.

[6] COUNTIES (46)—CONTRACTORS' BONDS—CLAIMS—ASSIGNMENT FOR COLLECTION. A claim against the bond of a contractor on county road work is not defeated by its assignment for the purposes of collection.

[7] APPEAL (123)—EVIDENCE (138)—OBJECTIONS — WAIVER — DOCUMENTARY EVIDENCE—EXECUTION OF INSTRUMENTS. Error cannot be assigned on the receipt in evidence of an assignment purporting to be made by an agent, in that authority was not shown, where no objection was made below when the document was offered.

[8] HIGHWAYS (36)—CONSTRUCTION—CONTRACTS—BREACH OF SUBCONTRACTS—EVIDENCE. Breach of subcontracts on county highway work, entitling the subcontractors to a *quantum meruit*, on abandoning the contracts, are not shown where it was orally agreed that the contractor should meet their monthly pay rolls, which was done, and no demands for estimates under the contract were refused.

[9] SAME (36). Subcontractors on county highway work are not warranted in abandoning the work on account of delay in setting grade stakes which was not the work of the contractor, or for delay in the performance of bridge work by another contractor which had superior rights, and no unusual delay occurred that should not have been anticipated, and opportunity was given them to complete the work.

[10] SAME (36)—RECOVERY OF OFF-SET—FAILURE TO GIVE NOTICE. The contractor's expenditures in completing the work of subcontractors cannot be recovered as an off-set, where it failed to plead or prove a compliance with the contract requiring a three days' written notice to the subcontractors to complete the work or deduct the cost thereof.

[11] SAME (33)—CONTRACTS—EXTRA WORK—QUANTUM MERUIT. A subcontractor on county highway work, is entitled to recover on *quantum meruit* for doing work not included in his written contract.

[12] COSTS (8)—PREVAILING OR SUCCESSFUL PARTY—PAYMENT OF MONEY INTO COURT. The state is entitled to its costs, where

it is brought into an action to recover on the reserve fund and bond of a contractor on public work, because of its interest in the reserve fund, and pleads readiness to pay the same into the registry of the court.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered September 21, 1927, upon findings in favor of the plaintiffs, in consolidated actions upon a contractor's bond. Affirmed in part and reversed in part.

*Roberts, Skeel & Holman* and *Elwood Hutcheson,* for appellants.

*Dysart & Ellsbury* and *Troy & Yantis,* for respondents Rachow *et al.*

*The Attorney General* and *V. D. Bradeson,* for respondent State Highway Committee.

*Nelson R. Anderson, amicus curiae.*

Tolman, J.—Appellant Philbrick & Nicholson, Inc., contracted with the state through its highway committee to clear, grade and construct a certain state highway. Appellant Maryland Casualty Company became the surety on the contractor's bond given to the state. After the work was completed and accepted by the state, thirteen separate actions were commenced in the superior court for Thurston county against the contractor, the bond and the reserve fund in the hands of the state. Eleven of these actions were to recover for material and supplies furnished to and through respondents Rachow and A. E. Wilber, who had entered into written subcontracts, and the remaining two were upon the claims of the respondents last named.

The actions were tried together to the court sitting without a jury, resulting in judgments against the contractor and the surety, and they have appealed from four of these judgments only. By stipulation, these

four cases are consolidated for the purpose of this appeal.

In the interest of clarity and brevity, we will state only such facts as are necessary to an understanding of each point raised, in conjunction with the point discussed.

[1] (1) Those here claiming for materials furnished, filed their claims with the state highway department, and afterwards, but within thirty days after the completion and acceptance of the work, again filed substantially the same claims. The actions were commenced within four months after the last filing. Appellants contend that the claimants were bound by the first filing in each instance, and that suits not having been commenced within four months after the first filing, the bond is released, or in other words, that by re-filing their claims the claimants cannot extend the period fixed by the statute, and are bound by their first act of filing. We seem never to have passed upon this identical question, but it involves exactly the same principle as the taking of appeals and the filing of mechanics' liens and we think we cannot sustain appellants' contentions without, in effect, overruling *Lindley v. McGlauflin*, 58 Wash. 636, 109 Pac. 118; *Sligh v. Shelton Southwestern R. Co.*, 20 Wash. 16, 54 Pac. 763; *Tatum v. Geist*, 40 Wash. 575, 82 Pac. 902; *Carstens & Earles v. Seattle*, 84 Wash. 88, 146 Pac. 381.

We conclude that this objection is not well taken.

[2] (2) The claimants furnishing material to and through respondents Rachow and A. E. Wilber, who had entered into written subcontracts with the principal contractor, did not give to the principal contractor a ten days' notice as provided for in Rem. Comp. Stat., § 1159-1 [P. C. § 9725]. The omission to give the statutory, or any notice, was by the trial court held immaterial because of a certain provision of the

contract between the principal contractor and the state which reads:

"RESPONSIBILITY NON-TRANSFERRABLE:

"XIII.   The contractor shall not let, assign, or transfer this contract, or any interest therein or any part thereof, without the consent, in writing of the State Highway Engineer.

"The contractor shall give his personal attention to the work at all times, and shall be present, either in person or by duly authorized representative, on the site of the work continually during its progress, and shall receive instructions from the State Highway Engineer. Any sub-contractor shall be considered the agent of the contractor, and the latter shall be responsible for any indebtedness incurred by such agent. If any sub-contractor fails to perform his work in a satisfactory manner, his sub-contract may be terminated by the State Highway Engineer"

and because it was stipulated that the state never in any way consented to or recognized the subcontracts.

Appellants and *amicus curiae* argue with much confidence and considerable force that our cases of *Crane Co. v. Maryland Casualty Co.*, 102 Wash. 59, 172 Pac. 866, and *Cascade Construction Co. v. Snohomish County*, 105 Wash. 484, 178 Pac. 470, are not decisive upon this question, and that, if as they contend, this provision was inserted in the contract for the benefit of the state alone, respondents cannot claim protection thereunder.

The bond here involved was a statutory bond and its terms applicable to the question now under consideration seem to be identical with the provisions of the bonds considered in the cases cited. The contract here does not require the filing of the subcontracts with the state, but, in view of the conditions already quoted, we cannot now see that this difference warrants any distinction. In the *Crane Company* case, the question of the giving of the ten days' notice was not raised.

Hence, that case may not be directly in point upon that issue, but in the *Cascade Construction Co.* case, the failure to give the ten days' statutory notice was directly raised and relied upon, and after analyzing the holding in the *Crane* case, this court there said:

"What was meant there was that, so far as the original contractor and the surety upon that contract were concerned, Musgrave and Blake were agents of the original contractor for the purpose of purchasing supplies used in the building. There was no question of notice in that case, and the use of the word 'subcontractors' was to denote agency, as the whole context indicates. In so far as these claimants are concerned, under the facts in this appeal, the subcontract as to them was of no force. The provision in the original contract that the contractor shall not let, assign or sublet the work provided to be done, or any part thereof, without the consent of the board, and that the contractor shall file with the board a duplicate of all contracts made by him as aforesaid, was for the protection not only of the board itself, but of all persons who furnished supplies, material and provisions for the work to be done; and since that contract was not filed with the board as the original contract required, it gave no notice to persons furnishing material or supplies that they were not furnishing such supplies for the original contractor, whose contract was on file.

"When the original contractor fails to file his subcontract he thereby waives the right to the notice required by Rem. Code, § 1159-1."

This language answers every contention now made, and holds directly that a provision in the contract, such as we have here, is not made for the protection of the state alone, but also for the protection of those furnishing material. The state has an interest in seeing that the material going into its work is paid for; that its citizens are not deprived of their just dues, and that no causes for dissatisfaction and litigation shall arise to the embarrassment or loss of any concerned in com-

pleting the work. Wholesome and necessary as the statutory notice is, we cannot hold that the party most to be benefited thereby may not, as was done here, contract directly with the state; that, in the absence of consent by the state, any person with whom he may subcontract shall be his agent, and he will be responsible for any indebtedness contracted by such agent.

[3] (3) The next question raised is as to the lienability, or the right to recover against the bond, on the Carlson claim. That claim, so far as allowed by the trial court, was for the shoeing of horses used by the respondent A. E. Wilber in carrying out his subcontract. Respondent argues that the shoeing of horses is not repairing in the sense that tools and equipment used on the job might be repaired, but that it is, in principle, the same as feed for the horses, something necessary to keep them fit for the work and on the job and relies upon the case of *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337. The gist of that decision upon this point is found in the following language:

"It seems to us that the words 'provisions' and 'supplies' includes anything that is furnished for, and used directly in the carrying on of the work, and is entirely consumed thereby. Such things do not enter into and become a physical part of the finished structure, as materials do, as that word is generally construed; but they do become as much a part of the structure as the labor which is performed upon it. It seems quite clear to us that coal, horse feed, and work performed by teams, all come within the terms of the prescribed statutory conditions of this bond, which become the measure of the rights of the several claimants."

Were the shoes put upon the horses necessarily entirely consumed in the work? Manifestly not. Horse shoes are not necessarily renewed from day to day, and are not daily entirely consumed as is the feed

which is eaten. The shoes may remain serviceable for weeks or months, and the horses shod on this job may expend the larger part of the benefits of such shoeing on a subsequent job. The subject was again considered by this court in *United States Rubber Co. v. American Bonding Co.*, 86 Wash. 180, 149 Pac. 706, where it was said:

"A supply would be any article furnished for carrying on the work which from its nature is necessarily consumed by use in the work, while equipment would consist of those articles that are not necessarily so consumed, but which may survive the particular work and be further used on work of like character. In this view, also, the question actually decided in the case of *National Surety Co. v. Bratnober Lumber Co.* harmonizes with the other cases cited, since coal, like powder and other explosives, and like electricity used for power, and other forms of energy used for the same purpose, is necessarily consumed by its use, and cannot survive for like uses in a similar character of work.

"Tested by these rules, it is plain that the articles furnished by the appellant are not supplies, but are a part of the contractor's equipment. While they were actually worn out by use in carrying on the work, they were not articles of such a nature as to be necessarily consumed by such use, and might have survived, had their use thereon been of less duration, for use in subsequent work of like character."

Under this ruling, the Carlson claim should have been disallowed, and the judgment appealed from in that case must be reversed.

(4) Respondent Arman Wilber recovered a judgment below upon two causes of action. The first cause of action was for the use of five teams of horses, owned by him and furnished to his father, A. E. Wilber, for use on the job for three months at thirty dollars per month per team, or a total of $450. The second cause of action was a claim of his brother, Vernon Wilber, exactly the same as to all its terms,

which had been assigned to Arman Wilber by written assignment absolute in form. The trial court entered judgment for the full amount of both claims. Several errors are assigned affecting this judgment.

[4] (a & b) It is claimed that these horses, in fact, belonged to A. E. Wilber, and in any event, as against the surety, recovery can be had only for the time the horses actually worked. Appellants in these respects rely only upon the supposed weakness of the respondent's case. We have gone into the statement of facts for the evidence, and a careful study of it convinces us that, even as against the surety, it is sufficient, uncontradicted as it is, to support the finding of the trial court.

[5] (c) It is contended that, in any event, there can be no recovery upon the assigned cause of action, because the law does not authorize an assignment as against the bond; the claim was filed by the assignor subsequent to the assignment, and that the assignment is void because not properly executed.

The first contention was decided adversely to appellant in the well considered case of *Maryland Casualty Co. v. Philbrick & Nicholson,* 147 Wash. 277, 266 Pac. 142, and since that case is so recent and so thoroughly covers the whole ground, nothing need now be added.

[6] The written assignment was dated a couple of months before the claim was filed, and on November 3, 1926, the assignor, notwithstanding the written assignment, filed his claim against the bond. The assignment was absolute in form and, if the record disclosed nothing more, the objection might be well taken, but the respondent Arman Wilber testified on direct, and again on re-direct, examination, without objection, that the claim was assigned to him for collection only. Under this state of the record, we cannot say that the filing of the claim by the assignor, who was the person

to benefit ultimately by a recovery against the bond, was insufficient.

[7] The final contention with respect to this assigned claim is based upon the manner of the execution of the written assignment. The instrument is signed "Vernon E. Wilber by John J. McCarthy." And the objection is that the instrument does not disclose or establish by what authority McCarthy signed Wilber's name thereto. It is now too late to raise this question. The record discloses that Arman Wilber, when examined as a witness, identified the written assignment. It was then offered in evidence and admitted without objection. If the authority of McCarthy was questioned, objection to the introduction of the instrument should have been made for want of proof upon that ground, and respondent could then have supplied the necessary proof, if that were available. Failure to so object was tantamount to an admission of authority in McCarthy. The Arman Wilber judgment will stand affirmed.

[8] (5) The so-called subcontractors' cases are, perhaps, the chief bone of contention here, though, with a single exception hereinafter noted, the questions involved, as we now see them, are mainly questions of fact only.

Respondent Wilber sued on *quantum meruit*, alleging that he had been prevented from performing his subcontract; that his pay roll had been met by Philbrick & Nicholson, but that he had received nothing for his own services and the use of his teams, tools and equipment and prayed for reasonable compensation therefor. Rachow, in his original complaint, alleged full performance of his subcontract, but, by trial amendment, was permitted to so change the allegations of his complaint as to allow a recovery on *quantum meruit* on the same theory as that presented by Wilber.

Appellant Philbrick & Nicholson, by answer in each case, denied any prevention or fault on their part, and by cross-complaint sought recovery of amounts expended in completing each subcontract after abandonment by the subcontractor.

Error is assigned upon the ruling permitting the trial amendment of the Rachow complaint, but our conclusion upon the facts makes it unnecessary to consider this question.

The only thing indicating a breach of the subcontracts by Philbrick & Nicholson is some evidence by both Rachow and Wilber of a failure to give monthly estimates, but as both admit that it was orally agreed that Philbrick & Nicholson should pay their labor every month and that accordingly all of their pay rolls, as submitted by them, were promptly paid, and as it seems apparent that by reason of such payments the subcontractors never had anything of any moment due them, and made no demands for estimates which were refused, we think we may disregard the claim of any such breach.

[9] The trial court decided these cases on the theory that the subcontractors were prevented by Philbrick & Nicholson from performing. Our study of the testimony leads to a contrary conclusion. The so-called prevention relied upon consisted of delay in the setting of the grade stakes, delay caused by the non-completion of the bridges, delay caused by the grubbing not being completed in a timely manner, and a sort of gesture by Rachow to the effect that Philbrick & Nicholson took him from his contract work and placed him elsewhere. As to the setting of the grade stakes, that was admittedly the duty of the engineer in charge for the state highway department, with which Philbrick & Nicholson had nothing to do, and of course they cannot be held responsible, if there

was such delay. But as we read the evidence, there was no unusual delay so caused. The engineers in charge seem to have done all they could or should in that respect.

The bridges were being built under an entirely different contract by contractors, over whom none of the parties hereto had any control. The Philbrick & Nicholson contract provided that the grading should be so done as not to interfere with the bridge contractor, and by proper reference in the subcontracts, this and all other provisions of the original contract were incorporated in each of them. The bridge contractor, therefore, had superior rights, of which respondents were bound to take notice.

The overwhelming weight of the evidence is to the effect that all grubbing was done well in advance of the needs of these subcontractors who were engaged in grading only, except in one instance where the state had not yet secured the right of way, and that also was as promptly done as soon as Philbrick & Nicholson had permission from the state highway department as it reasonably might be. Some underground roots were encountered no doubt, and perhaps here and there a stump which had been overlooked, but there was nothing whatever in the situation, as far as we can see, more than is to be anticipated after the work of any grubbing crew. Any possible minor exceptions could have been taken care of as an extra under the contract, and were in our opinion insufficient to warrant respondents in abandoning the contract and wholly insufficient to justify a finding that they were thereby prevented from performing.

As to Rachow's removal to other work, we can hardly think this is put forward seriously. It appears that, at a time when he could not work upon the section

covered by his contract, he was given an opportunity to transfer his outfit to, and perform work upon, another section of the same work (called the Grand Mound section), where he could work, and instead of preventing performance, he was thus given an opportunity to keep his organization employed when it would otherwise have been idle. Later, he was given an opportunity to go personally to a distant piece of work, but his outfit in charge of a foreman was left on the job with instructions from Rachow to the foreman to complete the contract. Of course, if the foreman did not do as instructed, the default was Rachow's.

Neither Rachow nor Wilber claims to have made any demand upon Philbrick & Nicholson for an opportunity to complete his contract, and a preponderance of the evidence indicates quite clearly that each was urged to complete his work and each ignored the oral demands made in that respect. Wilber at least seems to have stood by and, without protest, permitted Philbrick & Nicholson to complete the work. The subcontract provides:

"Should the sub-contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, the contractor shall be at liberty, after three days written notice to the sub-contractor to provide any such deficiency and deduct the cost thereof from any moneys due, or to become due the sub-contractor under this agreement."

We are abundantly satisfied that the evidence preponderates against the findings of the trial court, and the respondents having failed to perform their contracts cannot recover upon them, nor can they recover upon *quantum meruit,* because their compensation is

fixed by the written contracts which they themselves have breached.

[10]   (6) The evidence abundantly shows that appellant Philbrick & Nicholson has paid out, in meeting respondents' pay rolls and in completing the work under each subcontract, far more than the contract price, and probably would be entitled to recover the overplus so expended on the cross-complaints, had it pleaded and proved a compliance with that provision of the subcontracts which we have just quoted. It will be observed that, before the contractor is entitled to expend money to complete the subcontractor's work and charge the money so expended to the subcontractor, a three days' written notice must be given. The cross-complaint does not plead that such a notice was given. We find no testimony to the effect that any such notice was given, and while there is abundant testimony that Wilber, at least, was orally urged to complete his work, that is insufficient to sustain the cross-complaint. A provision such as this is placed in a contract for a well-recognized purpose and the written notice not having been given, there can be no recovery upon the cross-complaint.

[11]   The judgment in favor of the respondent Wilber on his second cause of action is not drawn in question here and will stand affirmed. We are unable, from the record before us, to segregate the time which Rachow with his outfit spent upon the Grand Mound part of the work which was not included in his written contract. That was an employment for which recovery may be had on *quantum meruit*. The judgment in favor of Rachow is reversed, with directions to try out the issue as to the Grand Mound work and enter judgment as the facts may warrant. In all other respects, the Rachow and Wilber judgments are reversed, with instructions to dismiss.

[12]  (7) There remains but one other question. In all of these cases, the state highway committee was made a party because of its possession of the reserve fund, and it appeared in the action by the *Attorney General* to preserve its rights. In each case, the court directed the highway committee to pay the reserve fund into the registry of the court for such disposition as the court should direct, and allowed the state to recover its costs. Appellants have assigned error in this respect. The language of the statute, Rem. Comp. Stat., § 476 [P. C. 7457], is "the prevailing party shall be entitled to his costs and disbursements" and it seems to be contended that, because there is no issue between the appellants and the state, the state is not the prevailing party. However that may be, it is by reason of the actions of the contractor and its surety that the state is brought into this litigation, and when it was brought in, it pleaded a readiness to pay the fund into court and prevailed upon that plea. We think the order permitting the state to recover costs comes within the spirit of the statute, and it is affirmed.

The judgment in favor of Carlson is reversed.

The judgment in favor of Arman Wilber is affirmed.

The judgment in favor of Rachow is reversed, with directions to proceed as hereinbefore indicated.

The judgment in favor of A. E. Wilber on his first cause of action is reversed, and the judgment upon his second cause of action is affirmed.

Appellants will recover costs, except as against respondent Arman Wilber.

FULLERTON, C. J., PARKER, MITCHELL, and ASKREN, JJ., concur.