[No. 26168. Department Two. September 28, 1936.]

WESTERN STEEL CASTING COMPANY, *Respondent*, v. EDWARD L. EDLAND *et al.*, *Defendants*, UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant*, HUNT & MOTTET COMPANY *et al.*, *Respondents.*[1]

[1]Reported in 61 P. (2d) 155.

*Thos. L. O'Leary,* for appellant.

*Flick & O'Neill, Henderson, Carnahan & Thompson, Earl V. Clifford, Emil N. Stenberg,* and *Wayne W. Keyes,* for respondents.

BLAKE, J.—On April 27, 1934, Edward L. Edland entered into a contract with the state of Washington, whereby he agreed to "do all work and furnish all tools, materials and equipment for manufacturing and stockpiling crushed stone (oil rock) materials" on a state highway to be constructed in King and Pierce counties. Among others, the contract contained the following provision:

"The term 'materials' as used herein includes, in addition to materials incorporated in the project used or to be used in the operation thereof, equipment and other materials used and/or consumed in the performances of the work."

With United States Fidelity & Guaranty Co., as surety, the contractor entered into a bond with the state, conditioned as follows:

"If the Principal herein shall faithfully and truly observe and comply with the terms, conditions and provisions of said contract in all respects, and shall well and truly and fully do and perform all matters and things by him undertaken to be performed under said contract, upon the terms proposed therein, and within the time prescribed therein, and shall indemnify the State of Washington against any direct or indirect damages that shall be suffered or claimed, for injuries to persons or property during the construction and improvement of such highway, and until the same is

accepted, and shall pay all laborers, mechanics, subcontractors and material men, and all persons who shall supply such contractor or subcontractor with provisions and supplies for the carrying on of such work, and shall in all respects faithfully perform said contract according to law, then this obligation to be void, otherwise to remain in full force and effect.''

The contractor failed to pay obligations incurred during the progress of the work to various persons, firms and corporations. This case involves claims made on account of some twenty-two of such persons, etc., against the bond. Trial being had, the court made findings favorable to claimants and entered judgment accordingly. The defendant United States Fidelity & Guaranty Co. appeals.

With a few exceptions, to be noticed later, it will be unnecessary to consider the claims individually or in detail. For the judgment must stand or fall upon the construction to be placed upon the bond and contract. If the bond is the strictly statutory bond required by Rem. Rev. Stat., § 1159 [P. C. § 9724], the judgment, for the most part, cannot stand. For the claims are predicated principally upon what would be classified as equipment or supplies *not* consumed in the performance of the contract, for neither of which recovery can be had against the statutory bond. *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337; *United States Rubber Co. v. American Bonding Co.*, 86 Wash. 180, 149 Pac. 706, L. R. A. 1915F, 951; *Rachow v. Philbrick & Nicholson*, 148 Wash. 214, 268 Pac. 876.

There is no question but that the bond is a *statutory bond*, in that it contains the statutory condition to faithfully perform all the provisions of the contract, and pay all laborers, mechanics, subcontractors and material men, and all persons who shall supply such contractor or subcontractor with provisions and sup-

plies for the carrying on of such work. But the fact that it is a statutory bond does not preclude the inclusion of obligations broader than those required by the statute. *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A, 767. In that case it was said:

"The fact, however, that the bonds *in connection with the provisions of the contracts secured thereby* are farther reaching than the strict statutory conditions of such bonds, we think, does not render the farther reaching conditions here involved inoperative or void. The law seems to be well settled that bonds of this nature may be required by, and given to, a public corporation in excess of, or without any statutory authority and the beneficiaries thereunder be none the less entitled to recover thereon." (Italics ours.)

The rule stated is supported by the great weight of authority. See notes to the following annotated cases: *Denver v. Hindry* (40 Colo. 42, 90 Pac. 1028), 11 L. R. A. (N. S.) 1028; *Clatsop County ex rel. Hildebrand v. Feldschau* (101 Ore. 369, 199 Pac. 953), 18 A. L. R. 1221; *Southwestern Portland Cement Co. v. Williams* (32 N. M. 68, 251 Pac. 380), 49 A. L. R. 525.

As indicated in the above quotation from the *Gallucci* case, the question (whether the obligation of the bond is broader than required by the statute) is to be determined in connection with the provisions of the contract secured. But before analyzing the provisions of the contract above quoted, we wish to emphasize some of the provisions of the bond itself. We find this obligation:

"That he (the contractor) will undertake and complete the construction of a portion of State Road No. 5, Enumclaw to Park Entrance, Unit 1 of Federal Public Works Project No. 6720, in Pierce and King Counties, Washington, between Mile Post 3.8 and Mile Post 34.5, as per maps, plans and specifications made

a part of said contract, *which contract as so executed is hereunto attached, is now referred to and by reference is incorporated herein and made a part hereof as fully for all purposes as if here set forth at length."*

And we have, in addition to the conditions prescribed by Rem. Rev. Stat., § 1159 [P. C. § 9724], the following:

*"If the Principal herein shall faithfully and truly observe and comply with the terms, conditions and provisions of said contract in all respects, and shall well and truly and fully do and perform all matters and things by him undertaken to be performed under said contract, upon the terms proposed therein, and within the time prescribed therein, . . .* then this obligation to be void, otherwise to remain in full force and effect." (Italics ours.)

Now let us turn to the above quoted provision of the contract. It is at once apparent that the definition of *materials* is much broader than this court has held the provisions of the statute to mean. As we have said, our cases have confined the term *supplies and provisions* to such as become a part of the completed work or such as are consumed in the performance of the contract. But this contract includes, in addition thereto, *"equipment and other materials used* and/or consumed in the performance of the work."

It seems obvious to us that this provision was put into the contract in contemplation of the construction placed by this court upon the term *provisions and supplies,* as used in the statute. And the reason for broadening the definition of the term *materials* is quite as obvious. The only thing the contractor furnished that went into the completed work (the highway) was crushed rock. Under his contract, he was required to deliver this in stockpiles at intervals along the highway. In order to accomplish this, it was necessary to keep a rock crusher operating, maintain bunkers, and

keep trucks moving. Of necessity, in such an operation, there would be requirements for replacement of parts of machinery and equipment. These replacements might or might not be *consumed* in the performance of the work.

Under our definition of the statutory term *provisions and supplies,* persons furnishing such parts of machinery and equipment might or might not have recourse against the bond—depending on whether or not the supplies were *consumed* in the work. It is clear that it was to obviate all doubt in this respect that the contract defined *materials* to include also such "equipment and other materials" as were *used* in the performance of the work. Notwithstanding our construction of the term *provisions and supplies,* as used in the statute, the parties had a perfect right to broaden the scope of the term *materials* by contract. We think it clear that such was their expressed intention. And it is equally clear that the bond secured "materialmen" who furnished equipment and supplies under the broadened definition of the term.

Appellant contends that, even under such construction of the contract and bond, it was charged in the judgment with certain equipment and material not used in the performance of the work. We will take these up in the order presented. There are three such items in the claim of Shaub-Ellison Co.:

*First.* Of the claim allowed, $48.60 was for supplies furnished Edland prior to April 27, 1934, the date the contract with the state was executed. This item was undoubtedly included in the judgment through inadvertence. Mr. Shaub himself testified they were not seeking to recover against the bond on account of it. That item will be disallowed.

*Second.* Shaub-Ellison sold tires to Edland for four employees. There is no evidence that these

tires were used on the work. It does appear, however, that the employees were engaged on the work, and that the cost of the tires was charged against their wages. Had their wages not been paid, the employees would, admittedly, have had recourse against the bond. For all practical purposes, Shaub-Ellison paid the wages of these employees to the extent of the cost of the tires. While Shaub-Ellison holds no assignments from the employees, we think it is entitled to recourse against the bond on the theory of subrogation. See 60 C. J. 816, § 118. In *Johnson v. Martin*, 83 Wash. 364, 145 Pac. 429, this court said: "The supreme court of this state has taken its stand with those courts which have declared that the right of subrogation will be allowed when the equities of the case demand it."

*Third.* On April 27th, Edland purchased from Shaub-Ellison tires and tubes in the amount of $377.34. These were put on trucks which were used on the job. Clearly, they come within the terms of the contract and bond.

Allowance was made to claimant G. W. Pautsch in the amount of $25.60 for supplies purchased between March 7 and April 5, 1934. This amount was doubtless allowed through inadvertence. It will be disallowed.

It is contended that $105.19 allowed claimant Pease Bros. is not chargeable against the bond. As we gather it, the point is that the evidence was insufficient to show that the materials were used in the performance of the work. Counsel for appellant stipulated: "It is agreed all of the items—Pease Brothers Incorporated account is for parts that went into the equipment, either the trucks or other equipment there on the job." Under this stipulation, the amount was properly allowed.

It has been pointed out that allowance has been made in the judgment to claimant Hunt & Mottet Co., for

certain items, in support of which no evidence was offered. According to our computation, in so far as pointed out in appellant's brief, these items amount to $15.33. Further claim is made that this claimant waived its claim to certain other items, such as lanterns, wire brush, pipe dies and Colman generators. While that inference might possibly be drawn, claimant denies any such intention and is pressing its claim in full here. There is certainly sufficient evidence to sustain findings that such equipment and supplies were delivered to Edland and used on the job. Under our construction of the contract, they were chargeable against the bond. Only $15.33 will be deducted from the claim of Hunt & Mottet Co.

Except for this deduction and those of $48.60 and $25.60, above referred to, the judgment is affirmed. Costs to respondents.

MILLARD, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.