[No. 24358. Department One. March 24, 1933.]

RANDANITE COMPANY, *Respondent,* v. ALBERT L. SMITH
*et al., Appellants.*[1]

*Williams & Cornelius,* for appellants.

*Q. A. Kaune* and *D. V. Morthland,* for respondent.

MILLARD, J.—Plaintiff instituted this action to re-
cover from a contractor and his statutory surety for
nine thousand pounds of blasting powder sold by the
plaintiff to the contractor, and used by the latter in
the prosecution of work under a highway contract with
the state of Washington. Defendants admitted the
purchase and use of the powder. As an affirmative
defense and counterclaim, the defendants alleged that
the plaintiff represented, warranted or guaranteed

[1]Reported in 20 P. (2d) 33.

that, if the contractor used nine thousand pounds of plaintiff's powder as directed by the plaintiff, "use its said powder in the way that said agent directed it to be used and in the amount that was sold to said defendant," a certain desired result would be produced; that is, a certain number of yards of rock would be dislodged and broken into sizes convenient for use in the contractor's rock crusher; that, in reliance upon the warranty, the contractor purchased nine thousand pounds of powder from the plaintiff, used same as directed by the plaintiff, but that the powder did not blast the rock as plaintiff represented it would do;

". . . that said defendant, Albert L. Smith, relying on said warranty purchased said powder, drilled and otherwise excavated the holes in all respects as directed by said plaintiff, and loaded said holes in all respects according to the directions of plaintiff, and in all respects used said powder as directed. That the said powder so furnished by plaintiff to said defendant, Albert L. Smith, was not strong enough and in the quantity used was not sufficient for the purpose, and that when the blasting was done it was wholly unsatisfactory, and did not blast the rock as required for the purpose of said defendant, Albert L. Smith, said purpose being fully known and explained to plaintiff, and that by reason thereof the said quarry was ruined, . . ."

The trial court was of the view that there was an absence of evidence of breach of warranty by plaintiff, and directed the jury to find for the plaintiff in the amount claimed. From the judgment entered in favor of the plaintiff, the defendants have appealed.

Upon appellants was imposed the burden of proving that respondent promised or warranted a certain desired result would be produced if the contractor used nine thousand pounds of respondent's powder in a particular manner.

We may accept as true the testimony, which human experience brands as unlikely, on behalf of appellants to the effect that the contractor insisted that at least twelve thousand pounds of powder should be used, and that respondent, foregoing the opportunity for financial gain, earnestly urged that the contractor buy and use only nine thousand pounds of powder.

The contractor's experience in the use of blasting powder covered a period of twenty years. Immediately prior to the purchase of the powder, and before the statement was made upon which appellants rely, most of the holes or pockets in which the powder was to be placed for blasting were drilled and ready for reception of the explosive. No representative of the respondent was present when the powder was placed in the holes. No representative of respondent was present when the first blast was attempted. The contractor testified that respondent's representative called upon him just prior to the completion of the pockets for the powder; that the representative stated to him that, if the contractor purchased and used the nine thousand pounds of the respondent's quarry powder as directed by respondent's agent, the respondent would guarantee the shot. The contractor testified that he told the agent that he thought nine thousand pounds of powder was insufficient; that the rock was the hardest with which he had ever worked; that

"I asked him how much powder we should put in and what he thought. He figured and said he thought nine thousand pounds would be enough. I told him I would rather put in a ton more besides the black I had there; that I didn't consider twelve thousand pounds was too much; that it was very hard rock. . . . Q. You thought Mr. Hobart should have specified more powder for this job, did you? A. Yes, sir. Q. You thought you were going to take more than the amount he specified? A. Yes, sir. Q. And you told him so?

A. Yes, sir. Q. You told him you wanted it well shot? A. And pleaded with him. Q. Pleaded with him to send you more powder? A. Yes. Q. You were perfectly willing to buy more powder and pay for it? A. Yes. Q. Did he tell you they had a shortage of powder and they could not supply what you wanted? A. No, but that was sufficient. Q. Gave you to understand if you used more powder there you would be wasting it and throwing your money away? A. Yes, that is the idea. Q. You argued with him you should have more powder, and pleaded with him. Is that the fact? A. Yes, sir."

The contractor's son testified that he was present when respondent's agent stated, "We guarantee it will shoot it in good shape if you use nine thousand pounds;" that he understood it was the agent's opinion that a successful shot would be made if nine thousand pounds of powder were used.

The contractor testified that he dug the tunnels, loaded the pockets, back-filled them and put in the different pockets the quantities of powder respondent's agent told him to put in, but the contractor was unable to state how much powder the agent told him to put in each or any of the holes, or how much he, the contractor, placed in each or any of the holes. He admitted that the tunnels were nearly completed when respondent's agent first visited the quarry, and that the agent did not give any directions as to wiring the shot. The contractor's testimony was, in effect, that "I do not remember what the directions or instructions were, but, whatever they were, I implicitly followed them." It is similar to the testimony of a party to an automobile intersection action that he did not remember the speed at which he was traveling through the intersection, nor did he know what the legal rate of speed was through an intersection, but, whatever the legal rate, he was not exceeding it.

The trial court decided there was no function for the jury to perform. There was not an implied warranty. No claim was made, nor was any evidence introduced, that the powder was defective. There was not an express warranty by the respondent. There was no competent evidence from which the inference might reasonably be drawn by the jury that the statement of the respondent to the contractor amounted to a promise and was not merely an expression of opinion. Appellants alleged and attempted to prove that the powder in the quantity used was not sufficiently strong to achieve the result guaranteed. It was essential to the maintenance of the defense theory that the appellants prove not only that the promise—a certain desired result would be produced if the contractor used nine thousand pounds of respondent's powder in a particular manner—was made, but that the contractor used the powder as directed.

In what manner was the powder to be used? There was no evidence as to what instructions or directions were given by the respondent to the contractor. There was no evidence that the contractor complied with the instructions, other than the statement that, whatever the instructions were, the contractor implicitly followed them. The contractor's twenty years' experience with explosives was such that he could, had he been instructed as alleged and had he followed such instructions, have sufficiently detailed and described the pertinent facts to enable the jurors to form a correct conclusion, without the aid of opinions.

The contractor's testimony that he obeyed the respondent's instructions—there was no evidence as to what those instructions were—as to the manner in which the powder should be used, was a mere conclusion as to an ultimate fact which was for the determination of the jury. It is the general rule, which

needs no citation of sustaining authority, that witnesses must state facts, and not draw conclusions or give opinions. There is no logical reason for application in the case at bar of exception to the rule excluding opinion evidence. It was incumbent upon the contractor to state what instructions were given to him, and to then testify as to what he did in his endeavor to comply with those instructions. Whether the acts he testified he performed were in compliance with the instructions as to the manner in which he should use the powder, would be a question for the determination of the jury.

The appellant surety's motion for judgment in its favor, on the ground that the powder supplied to the contractor was not furnished particularly for the work under the contractor's highway contract with the state, was denied by the trial court. The surety company's assignment of error upon that ruling is without merit. All of the powder purchased by the contractor from the respondent was used in blasting rock from a quarry, which rock was to be used on the work under the highway contract with the state. It may be that the powder was wasted because not properly used in the blasting operations, that is, that as much rock was not dislodged as the respondent promised would be made available if nine thousand pounds of powder were used. However, the surety would not be thereby absolved from liability on its bond because of the contractor's improper use of the material supplied. While as much rock was not produced by the blast as anticipated, all of the rock obtained by that operation was used on the state job.

The judgment is affirmed.

BEALS, C. J., PARKER, and MITCHELL, JJ., concur.

HOLCOMB, J., concurs in the result.