[No. 25127. Department Two. December 10, 1934.]

LIDRAL-WILEY, INC., *Appellant,* v. UNITED STATES FIDELITY & GUARANTY COMPANY, *Respondent.*[1]

*Frank E. Hammond,* for appellant.
*Preston, Thorgrimson & Turner,* for respondent.

HOLCOMB, J.—This appeal is from a judgment dismissing appellant's action against respondent, after a trial on the merits to the court without a jury, upon a challenge to the sufficiency of the evidence at the close of appellant's testimony as to respondent, the surety company.

[1]Reported in 38 P. (2d) 346.

Appellant had commenced an action against the contractors in King county without joining the surety company, and afterwards commenced an action against respondent as surety, in which the contractors were made additional defendants. The contractors, a partnership known as McDonald & Sakoff, were never served with summons and complaint in the action against the surety company, nor did they appear therein. The two cases were not consolidated, but were brought on for trial at the same time under a stipulation that the testimony should be considered by the trial court in the determination of each case.

In its complaint upon three causes of action, appellant set up a written contract of lease, or rental, between the contractors, McDonald & Sakoff, and appellant. Under this contract, appellant agreed to rent to McDonald & Sakoff certain equipment described as 1-Lorain "75 shovel, 2 Linn Tractor Trucks, 1-320' Sullivan Air Compressor, 2-Jackhammers, drills, pipe hose, etc. For the use of the implements, McDonald & Sakoff agreed to pay a rental of $1,550 per month, with a minimum guarantee of one month. An initial payment of $1,000 was paid at the time and receipt acknowledged; $550 was to be paid on or before June 10, 1932. One Kenworth dump truck was then specified in the contract, which should be charged for at a daily rental of ten dollars per day for the actual number of days in use, in addition to the rental of $1,550. It was then agreed that the actual rental charges should begin when the equipment was landed at Wilson creek, but in no event later than June 1, 1932. The remaining rental was to be paid on or before the first day of each succeeding month, and to continue until the completion of the work by McDonald & Sakoff in Grant county, Washington.

It was agreed that McDonald & Sakoff would stand all expenses in moving equipment as it then stood at Twisp, Washington, and upon completion of the job would move the equipment to Wenatchee, Washington, and there turn it over to Lidral-Wiley, Inc. Provisions were then made for the proper maintenance and care of the equipment, after which it was recited that there were certain evident defects in the equipment as it then stood, which were specified as one cracked boom on the shovel, one broken rear axle on Linn No. 2, worn oats on Linn No. 2, and broken frames on both Linns. It was agreed that they were to be repaired, if necessary, by McDonald & Sakoff, and charged to Lidral-Wiley, Inc. The repairs were to be made at Wenatchee, Washington, and not to exceed four hundred dollars, except upon written approval of lessor, and duplicate receipts for all items of repair to be furnished to lessor. There was an agreement that lessees would deliver the equipment at Wenatchee, Washington, when finished with the contract in Grant county, Washington, or at such other place as designated by lessor at a cost not to exceed delivery in Wenatchee.

The contract was executed in duplicate on May 10, 1932, by appellant by J. F. Lidral, President-Manager, and by the contractors by T. W. McDonald.

Respondent had given its bond in the penal sum of $15,377 to the state for Grant county, Washington, to insure the faithful performance of a contract with Grant county, Washington, upon a certain lateral highway therein, among other things insuring that McDonald & Sakoff should faithfully perform all of the provisions of such contract, and indemnify and save harmless the board of county commissioners against any direct or indirect damages suffered or claimed for injuries to persons or property, and pay

all laborers, mechanics, sub-contractors and materialmen and all persons supplying such person or persons or sub-contractors with the provisions and supplies for carrying on such work. This bond was executed and delivered to Grant county on April 30, 1932.

On September 17, 1932, appellant presented its claim to Grant county for $6,196.62, with five hundred dollars attorney's fees in addition, but claimed to have later discovered that the equipment had been used in double shifts, which was not contemplated by the contract.

Appellant received from the contractors on May 11, 1932, one thousand dollars; on June 30, 1932, two hundred and fifty dollars; on July 14, 1932, two hundred and fifty dollars. Prior to the last payment of two hundred and fifty dollars, appellant had furnished the contractors materials amounting to $152.22, which had not been paid for at the time of the receipt of the two hundred and fifty dollars on July 14. Those payments were all credited to the general account of the contractors. Subsequently, appellant was paid $2,135.91 by Grant county out of the fifteen per cent reserved fund retained by the county for the protection of lien claimants. Under the terms of the contract, the contractors expended for repairs $233.48 for repairing the boom on the shovel, which was credited to their general account.

Upon the challenge by respondent at the conclusion of the evidence, which was all introduced by appellant, the trial court sustained the challenge and dismissed the case, upon the ground that appellant had failed to sustain the burden as to the bonding company of proving any right to recover any sum in excess of what it had already received; and therefore, as to the bonding company the motion for nonsuit was granted.

The sole error assigned by appellant on appeal is in dismissing its action.

Appellant concedes the rule followed in this state that it can in no event recover more than the amount due under the contract; and as to rentals, can hold respondent liable only for the reasonable rental value of the equipment for the days it was actually moving and in operation.

Both parties conceded, and the trial court followed, the principles laid down in *State Bank of Seattle v. Ruthe,* 90 Wash. 636, 156 Pac. 540, and *Puget Sound Bridge & Dredging Co. v. Jahn & Bressi,* 148 Wash. 37, 268 Pac. 169, where we laid down the rule that a claim against the bond can only be for the reasonable value of the use of the rented machinery *not exceeding the contract price,* and for the time during which the proof clearly showed the machinery to have been used in the work.

One of the contractors, McDonald, was a witness on behalf of appellant at the trial of the case, and also the truck drivers and shovel operators employed by the contractors. They substantially agreed that there were numerous shut-downs on the work because of the poor condition of the equipment, and that it could not be stated what the exact days were in which the shovel or the trucks were operated.

Appellant asserts that the basis of the hiring of the equipment was as shown on a small yellow slip of paper which was made by Lidral, president of appellant, at the time or just before the contract was executed, which computation showed that the shovel was to be paid for at the rate of six hundred dollars per month for one shift or nine hundred dollars per month for two shifts; that the two Linns were to be paid for at the rate of eight hundred dollars per month

for one shift or one thousand two hundred dollars for two shifts.

This contention cannot be sustained. There was nothing stipulated in the written contract between them as to whether the $1,550 per month for the shovel, Linn trucks, air compressor, jackhammers, drills, etc., was upon a one-shift or two-shift basis. Had it been contemplated that the compensation would be additional if the equipment was used two shifts per day, it would have been easy to have so stated in the written contract. This was not done. The written contract was for a straight rental of $1,550 per month, with a minimum of one month. In addition to that, there was a Kenworth dump truck, which was to be charged for at a daily rental of ten dollars per day for the actual number of days in use.

The testimony is not at all definite and certain as to what was the actual number of days the Kenworth truck was in use under that provision of the contract. Conceding, however, it was in actual use one hundred days, as claimed by appellant, which would amount to one thousand dollars, and that the other equipment was used as claimed by appellant, the total amount under the evidence and under the contract, *not exceeding the contract price* for the rental of such equipment, is $3,143.48. Appellant has undisputedly been paid by the contractors and by Grant county a total of $3,869.31, making an over-payment of $725.91. Deducting from that amount $556.46, claimed by appellant for cost of returning the equipment to appellant, which was contested by respondent as a claim not properly chargeable to it as surety and as excessive, there still remains an over-payment of $169.45.

Appellant's claim that it is not bound by the written contract, and the surety is liable for the reasonable rental value of the machinery used as orally

understood before the written contract was made, is untenable. Under the cases above cited, the surety can in no event be bound for a rental value in excess of the contract. Although appellant contends that it is not bound by the written contract for the reason that it is binding only as between the parties thereto, appellant sued upon the written contract as a part of its cause of action. If the principal contractors who signed the contract with appellant are not bound or liable, the surety manifestly would not be bound. The following cases cited by appellant to support this contention are inapposite to this case: *Cerini v. Chicago, Milwaukee & Puget Sound Ry. Co.*, 71 Wash. 310, 128 Pac. 666; *Ransom v. Wickstrom & Co.*, 84 Wash. 419, 146 Pac. 1041, L. R. A. 1916A, 588; *Roberts v. Stilltner*, 101 Wash. 397, 172 Pac. 738; *King v. Second Avenue Investment Co.*, 117 Wash. 41, 200 Pac. 572.

We have never permitted recovery against a surety on a public contractor's bond for a greater rate of compensation than that provided for by contract, and the cases cited by appellant, mentioned below, have not varied from that rule: *National Lumber & Box Co. v. Title Guaranty & Surety Co.*, 85 Wash. 660, 149 Pac. 16; *Title Guaranty & Surety Co. v. First National Bank of Hoquiam*, 94 Wash. 55, 162 Pac. 23; *Rachow v. Philbrick & Nicholson*, 148 Wash. 214, 268 Pac. 876; *Randanite Co. v. Smith*, 172 Wash. 390, 20 P. (2d) 33.

We conclude that the judgment must be, and is, affirmed.

BEALS, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.